William **CRAFT, Jr., Appellant,**

v.

**UNITED STATES of America,**
Appellee.
No. 16004.

United States Court of Appeals
Fifth Circuit.
June 28, 1956.

---

Richard C. Baldwin, New Orleans, La., for appellant.

E. E. Talbot, Jr., Prim B. Smith, Asst. U. S. Attys., George R. Blue, U. S. Atty., New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

After waiver of a jury trial, appellant was convicted by the district court of having knowingly transported a stolen motorcycle in interstate commerce from Houston, Texas, to Ascension Parish, Louisiana, in violation of the National Motor Vehicle Theft Act, 18 U.S.C.A. § 2312. From his conviction and resulting one year penitentiary sentence, appellant prosecutes this appeal in forma pauperis, specifying error solely for the alleged insufficiency of the evidence to show either his transportation of the particular vehicle as charged, or that such transportation was with the proscribed felonious intent of depriving the owner permanently of his property.

To facilitate an intelligent appraisal of the overall sufficiency of the Government's evidence to support appellant's conviction, we have separately abstracted all of its material testimony as an appendix to this opinion. The district court thought that this testimony sufficiently identified the vehicle and revealed appellant's unlawful interstate transportation with intent to steal to justify a finding of guilt beyond a reasonable doubt of the offense denounced by the statute.[1] We agree.

We think the inference is conclusive from this record and the exhibits

---

1. "It is the Court's view that the guilt of the defendant has been established beyond a reasonable doubt. * * *

    "It is the Court's belief that the evidence shows that the defendant intended to keep the vehicle. Under the circumstances of this case, certainly the defendant is not entitled to any favorable inferences. He took the vehicle, according to the credible evidence in the case, in the middle of the night, took it to another state, and was headed apparently into a third state. He took with him some money that was available in the

house. That is a strong circumstance which will indicate that after stealing the money from the babies' bank he wasn't coming back to those parents of these children and face them. I realize that a jury may have come to a different conclusion, but I don't believe that under the circumstances of this case that you are entitled to any favorable inferences. However, the Court is going to have your background investigated and find out what is wrong with you, and see whether or not we can help you."

that the motorcycle so clandestinely removed from the Gernon garage, either late on the evening of August 4 or early on the morning of August 5, 1955, was taken by appellant, and was the identical vehicle with which he was apprehended by the Louisiana authorities some 10 hours later near Baton Rouge. The only conceivable basis upon which appellant might legitimately claim exoneration is that he simply "borrowed" the Gernon motorcycle for the weekend without express permission, inferably for the purpose of visiting his estranged wife and child in Alabama, and with the intention of returning to the job Gernon had located for him in Houston. The statement which appellant made to the F. B. I. agent, Charron, and Sheriff Ambeau subsequent to his arrest, together with portions of Charron's testimony and that of Winston Davis, do tend to support the theory that appellant may not have intended to steal the vehicle, but was guilty of the state offense of unauthorized use of the motorcycle. However that statement was not conclusive, and in view of the other incriminating proof offered through Gernon, Davis and his wife, indicative of appellant's awareness of his lack of authority to use the vehicle, the stealthy and furtive method by which he took the money from the "piggy bank" belonging to the Gernon children and the change from Davis' pocket while they were all sleeping, then rolling the motorcycle some distance away from the Gernon garage before starting it so as to avoid detection, are circumstances which, in the absence of any defensive proof, the district court was authorized to regard as consistent with his guilty intent and inconsistent with any reasonable hypothesis of his innocence. Thus, we cannot view the proof as lacking in that degree of cogency required to support his conviction. See Kassin v. United States, 5 Cir., 87 F.2d 183; Vick v. United States, 5 Cir., 216 F.2d 228; Cf. Murphy v. United States, 5 Cir., 206 F. 2d 571, 573.

Affirmed.

## Appendix.

Arthur Peter Gernon, the first witness for the Government, testified that he resided c/o Route 10, Box 301, on the north side of Houston, Texas; that he knew and identified appellant as the man that had come from Florida to Houston with Gernon's brother-in-law (Winston Davis) seeking employment; that he let appellant and Davis live in his home with his wife and four children until he could find some regular work for appellant, and in the meantime appellant worked around his home in Houston for "about two weeks" doing odd chores, like mowing the lawn and painting fence posts, for a little spending money; that he owned and held a Texas registration certificate on a blue 1948 model Harley-Davidson motorcycle, motor number 48EL–4750; that, during the three or four weeks that appellant remained at his home, he had never granted him permission to use the motorcycle on his own, nor had his wife or brother-in-law let appellant use it with his knowledge, though appellant had ridden on the vehicle with him and his brother-in-law "several times"; that on August 4, 1955, his brother-in-law, Davis, after obtaining his consent to use the vehicle, had driven away with it while accompanied by appellant, but they had both returned about 6 or 7 P.M. that evening and did not go out again together; that they had drunk a "few beers" and had no money, and had asked him for a few dollars so they could go back, but he told them he had no money; that they said "all right" and Winston went to bed, but "Junior" (appellant), who was "feeling pretty good", sat up and talked with him for a while about how to operate the motorcycle; that about 10:30 or 11:00 P.M. he tired of watching television and went to bed, but appellant was still up; that the next morning appellant was gone, his motorcycle was not in the garage, and also a little "piggy bank" full of pennies belonging to his two boys, together with all of the cigarettes belonging to his wife and Winston, were missing from his home, as

a result of which he notified the Houston authorities that the vehicle had been stolen; that to his knowledge appellant had neither asked for, nor been granted permission to use the vehicle that night for any trip to Montgomery, Alabama, by telephone or otherwise.

Mrs. Gernon, wife of Arthur Gernon, also identified appellant as having come to her home from Florida with her brother, Winston Davis, "to stay with us"; she testified that appellant was not regularly employed for the three weeks he stayed with them, but worked around the house for spending money; that neither she nor her husband had ever granted appellant permission to use her husband's motorcycle alone during this period, but that he had ridden on the vehicle as a passenger with her husband and Davis; that on the afternoon of August 4th her husband had let her brother take the motorcycle off for about an hour and a half, and "Junior" went with him; that when they returned they had had a few beers and asked her for permission to use the motorcycle to pick up some girls with whom they had "dates", but she refused to ask her husband to let them have it, after which her brother went to bed and her husband stayed up for a while and then went to bed; that she woke up during the night and heard a motorcycle being started kind of "far away", but that it wasn't close enough to wake her fully; that the next morning when she woke up "Junior" and the motorcycle were both gone, his bed had apparently not been slept in during the night, and her kids' piggy bank, as well as some cigarettes and a pair of pants and shirt belonging to her brother were missing from the house; that she then called the Police, who advised her to have her husband sign a complaint against "Junior", which he did, because Junior had neither asked for, nor received permission to use the motorcycle that evening for any trip to Alabama, or anywhere else.

Winston Davis identified the appellant and testified that they had become friends down in Orlando, Florida, and had left together to stay first with his brother and later with his brother-in-law, Gernon, in Houston; that appellant stayed in the same room with him and worked around the house, while he, Davis, worked with Gernon, a brick mason; that Gernon had located a job for appellant with a contractor to whom appellant was supposed to report for work the Monday following the weekend he left; that Gernon already had the motorcycle when they came to Houston, though after recovering it from appellant through the authorities he had traded it in to a Houston car lot on a '53 Ford; that he was allowed to drive the motorcycle almost any time he wanted it but neither his sister nor brother-in-law ever gave appellant permission to use it alone; that he had allowed appellant to drive it "about twenty minutes" just once, when appellant "just went around the block", but this fact was not known to the Gernons at the time and they had not authorized appellant's use; that on the late afternoon of August 4th he had used the motorcycle to go to the barber shop, taking appellant with him, after which he and appellant had "a couple of beers", ran out of money, and returned to the house to borrow from Gernon so they could date a couple of girls; that Gernon told them he had no money, so he put the vehicle in the garage and went to bed, while Gernon and appellant talked in the living room; that he did not leave the house again and heard nothing during the night, but learned that the motorcycle and appellant were gone, together with the piggy bank, his pocket change, cigarettes, a pair of his pants and a shirt, when Gernon woke him up the following morning; that appellant left no clothes or anything else of any value at the house when he left; that his brother, who also lived in Houston, had given him a '40 Chevrolet, which he had permitted appellant to use, and that when appellant was driving it around once while he was drinking he had wrecked it, so that the witness was forced to sell the car for

junk and Gernon had paid appellant's fine amounting to about $47; that appellant did not have permission to use or borrow the motorcycle over the weekend, and the only reason they figured he took it was because he wanted to see his wife and baby in Alabama, but they did not know whether he intended to bring it back and go to work; that because he and appellant had been "buddies", he did not wish to harm him in any way, and had shared his clothes and car with him, but that he never gave appellant any authority to use the Gernons' property without permission.

Vernon W. Harris, Deputy Sheriff for Houston, Harris County, Texas, identified the records concerning the taking of the Gernon motorcycle, among which were a duplicate of the license receipt covering use of the same numbered and make of vehicle, authenticated by a tax office deputy. Through this witness the Government also introduced and identified a report of the offense by the Houston Sheriff's Office, indicating the owner of the vehicle and complainant as Arthur Gernon, with the same Houston address as that at which that witness previously testified he resided. The witness further testified that the license application and receipt listing Gernon as owner of the vehicle was sufficient to establish his ownership in Texas at that time, because he could not have obtained his certificate of title for that year and his license plates without surrendering his old certificate and license receipt.

Harold F. Charron, Jr., Special Agent for the F. B. I., identified the appellant and the statement which he and Deputy Sheriff Preston Ambeau took from him on August 6, 1955, while appellant was in jail at Gonzales, Louisiana, which statement appellant's counsel stipulated was free and voluntary.[1] This witness denied that appellant then represented to him any intention to use the vehicle just to "visit" his wife and child in Alabama, but did admit that appellant then stated he intended to go to work for Gernon in Houston.

Preston Ambeau, the final Government witness, Deputy Sheriff of Ascension Parish, Louisiana since 1951 to the date of trial, identified appellant, and testified that appellant had been arrested by Trooper Marona and charged with theft of the same brand and numbered motorcycle claimed by Gernon, according to the offense and vehicle storage reports of record; that appellant was taken to the Gonzales, Louisiana, jail and held for the Houston Sheriff's Office, and that he had been present when appellant gave his voluntary post-arrest statement to the F. B. I. agent, Charron, and watched him sign it; that appellant at that time did mention that he was going to Alabama to see his wife and child, but he did not remember him saying he was supposed to go to work in Houston the following Monday; that he was not present when the vehicle was removed from storage and delivered to Gernon, but regula-

[1] "I, Junior Craft, make the following voluntary statement to H. F. Charron, Jr., Special Agent, F.B.I., and Deputy Sheriff Preston Ambeau. I have been advised that I do not have to make a statement, that if I do it may be used against me in a court of law and that I have a right to an attorney.

"My name is Junior Craft and I am 22 years old.

"For the past 2 or 3 weeks I have been living in Houston with A. P. Gernon. I had been working around his house and was going to go to work putting on roofing with him.

"I had been using his 1948 Harley-Davidson motorcycle (on) errands around Houston.

"On Aug. 5th I was using the motorcycle, just riding around town. I had a notion to go see my wife and took off for Montgomery. This was about 2:00 A.M. I come straight through, stopping only for gas as needed, until I was picked up by the Louisiana State Police just south of Gonzales about noon Aug. 5th.

"I have read the above statement and hope (sic) and it is true.

/s/ "Jr. Craft"

"Witness:                                    8-6-55

H. F. Charron, Special Agent, F.B.I., New Orleans

Preston Ambeau, Deputy Sheriff, Ascension Parish."

tions required that Gernon show his credentials as owner and sign a release before he could obtain possession.

The Government rested, and appellant neither took the stand nor offered any defensive proof.