[No. 25170. Department One. February 14, 1935.]

WILLIAM BRUCE, *Appellant,* v. FIRST NATIONAL BANK OF SEATTLE *et al., Respondents.*[1]

[1]Reported in 41 P. (2d) 779.

*Chas. A. Wallace,* for appellant.
*Poe, Falknor, Falknor & Emory,* for respondent.

BEALS, J.—In his fourth amended complaint (filed against First National Bank of Seattle, a corporation, and Henry C. Field, trustee in bankruptcy of Paul E. Williams Co., a corporation), plaintiff alleged, first, his residence in the city of Seattle, and that Paul E. Williams Co. was a corporation engaged in business as a stock broker, maintaining its main office in Seattle, with a branch in Spokane; that defendant bank (by which we include its predecessor, Dexter Horton National Bank) was doing a banking business in the city of Seattle; that, June 19, 1929, plaintiff delivered to Paul E. Williams Co. (hereinafter referred to as the broker) a stock certificate, which, with plaintiff's consent, was sold on his account for $2,400, which sum was deposited in a Spokane bank to the broker's credit, the money being thereafter transferred to the broker's credit in the predecessor of defendant bank in Seattle; that, July 12, 1929, the broker drew its check upon the bank for $1,023.86, payable to plaintiff's order, covering a portion of the fund above referred to, and that this check was mailed to plaintiff at Spokane; that plaintiff's name was endorsed upon this check by a forger, the check cashed, and that plaintiff never received the money represented thereby. The complaint continues:

"(6) That on or about the 16th day of July, 1929, the said Dexter Horton National Bank received said check and charged the amount thereof to the account of the said Paul E. Williams Co. then on deposit with

said bank and returned said check to the said Paul E. Williams Co. and entered of record in its account with the said Paul E. Williams Co. a charge against said account in the sum of $1,023.86 and that said account continued to be charged with said sum until the said account was closed out by the defendants above named when the balance of said account, less the amount of said check, was paid over to and received by the defendant trustee above named, leaving on deposit in said account or in the possession of the said First National Bank the sum of $1,023.86 belonging to the plaintiff, William Bruce, but held and possessed by the said Trustee or the said bank, or both thereof, for the use and benefit and in trust for plaintiff above named.

"(7) That on or about the month of January, 1931, plaintiff made demand upon the defendants for the said sum of $1,023.86 then being held by said defendants in trust for the use and benefit of this plaintiff and defendants refused to pay over said sum to this plaintiff."

Plaintiff then alleged the bankruptcy of the broker and the appointment of defendant Henry C. Field as trustee; that the United States district court has granted leave to sue the trustee; and that the defendants have in their possession for plaintiff's use and benefit the sum of $1,023.86. Plaintiff then disclaimed any affirmative relief against the trustee, and prayed for judgment declaring that the sum above referred to belongs to plaintiff, and that defendants be decreed to be trustees thereof for plaintiff's benefit.

With the pleadings filed by the trustee in bankruptcy, we are not concerned. Defendant bank demurred to plaintiff's fourth amended complaint upon the ground that the same failed to state facts sufficient to constitute a cause of action against the bank, and upon the further ground "that the action has not been commenced, nor has the fourth amended com-

plaint been filed, within the time limited by law.''
This demurrer was by the court sustained, and, plain-
tiff electing to stand upon his complaint, judgment
was entered dismissing the action, from which judg-
ment plaintiff appeals.

It appears from the transcript that the original com-
plaint in this action was filed July 27, 1932; that the
amended complaint was filed March 10, 1933; the
second amended complaint, April 11, 1933; the third
amended complaint, July 25, 1933; and the fourth
amended complaint, October 30, 1933.

Appellant argues that, by his fourth amended com-
plaint, he alleged the existence of a trust relation be-
tween the broker and himself, pursuant to which the
broker came into possession of a sum of money be-
longing to appellant, which it deposited in a Spokane
bank; that the broker transferred this money to its
Seattle bank, respondent (which will hereinafter be
referred to as though it were the only respondent
herein), and sought to deliver a portion thereof to ap-
pellant by means of its check, payable to appellant's
order, as alleged. Appellant contends that the money
represented by the check was at all times his money;
that the payment of the check by respondent bank on
the forged endorsement should be held to be no pay-
ment at all; and that respondent had no right to charge
such payment to its depositor, the broker; that, con-
sequently, in law it must be held that the money still
remains on deposit with respondent; that this money
belongs to appellant, and that he is entitled to receive
the same.

Respondent argues, and the trial court held, that
the three year statute of limitations applies to such a
situation as is now presented, and that appellant's
cause of action is barred by that statute. Appellant
contends that the six year statute applies, in which

event, of course, the action is not barred; and also that, if it be held that the three year statute is applicable, the same did not commence to run until January 19, 1931, when appellant, according to his complaint, demanded of respondent that it pay to him the amount represented by the broker's check. Appellant argues that the pleadings do not disclose the date respondent returned to the broker the check which it had drawn to appellant's order; while respondent contends that, from the allegations of appellant's complaint above quoted, it should be held that appellant has pleaded that the check was returned to the broker July 16, 1929.

██ ██ In the first place, we hold that, for the purposes of the statute of limitations, the allegation "that on or about the sixteenth day of July," taken together with the copy of the check attached to the complaint, which shows that the same was paid on that date, alleges that the acts were accomplished July sixteenth. Construed technically, the paragraph quoted might bear the construction placed thereon by respondent, and be held to plead that the check was returned to the broker on the same day it was paid. While appellant could not complain if his pleading were so construed, we are not inclined to construe the same so strictly, and, considering the complaint as a whole, and that the return of the check and the charge of the amount thereof are pleaded, we take judicial notice of the well known banking custom that canceled checks are returned on the first of the month following payment thereof, and assume that the paragraph alleges that the check was returned and the charge thereof reported to the broker August 1, 1929. Assuming, then, that this was the first notice to the broker that the check had been paid, the original complaint, having been filed July 27, 1932, was filed within the period of

three years from the date the broker received notice that his check had been cashed, together with the canceled check.

■ Appellant now pleads the existence of a trust relation between his broker and himself, and as his rights cannot be greater than those of his trustee, the period of limitation which binds his broker also binds him.

"The general rule, sometimes declared by statute, is that, whenever the right of action in a trustee who is vested with the legal estate and is competent to sue is barred by limitation, the right of the *cestui que* trust is also barred; and this rule applies whether the *cestui que* trust is *sui juris,* or under disability during the period of limitation,—except where this application of the rule is abrogated by statute—or whether entitled in possession or in remainder, it being held to be immaterial whether the remainder is vested or contingent." 37 C. J., 719, 720.

■ In this connection, we hold that notice from the bank to the broker that the former had cashed the latter's check and charged the same to the broker's account constitutes notice that the bank then took the position that the check had been properly paid and properly charged; that this notice was given by the return of the canceled check with the bank statement; and that the statute of limitations started running from the date of such notice, not later than August 2, 1929. This holding is supported by the opinion of the supreme court of California, in the case of *Union Tool Co. v. Farmers & Merchants Nat. Bank,* 192 Cal. 40, 218 Pac. 424, 28 A. L. R. 1417, where the court said:

"It is, of course, the settled rule that the relation between a bank and its depositor arising out of a general deposit is that of debtor and creditor. The deposit creates a debt of the bank payable as and when demand for payment is made. Accordingly, it is the

general rule that there is no default on the part of the bank, and hence no accrual of a cause of action against it to recover the balance of a general deposit until its payment is demanded or there is some act on the part of the bank dispensing with such demand. (*Mitchell v. Beckman*, 64 Cal. 117 [28 Pac. 110]; 7 Cor. Jur. 663, sec. 366, and cases cited; 3 R. C. L. 569, and cases cited; note 2 L. R. A. (N. S.) 571, and cases cited.) But the basis of the rule and indeed the statement of it, shows the proper limitations. A demand is ordinarily necessary because until it is made and refused there is no denial by the bank of its liability to pay, and no default out of which a cause of action could arise. Where, however, the bank either in terms or in effect, has denied liability to the depositor for the amount in question this is an 'act on the part of the bank dispensing with such demand,' the cause of action accrues, and the statute of limitations, where one is applicable, is set in motion."

The supreme court of Kansas, in the case of *Kansas City Title & Trust Co. v. Fourth National Bank*, 135 Kan. 414, 10 P. (2d) 896, 87 A. L. R. 334, in deciding a similar question, said:

"Where the bank renders a statement to the depositor showing the status of his checking account, it says to him in effect, 'This bank owes you this stated balance, and no more.' Such statement may fairly be construed as a notice that any claim the depositor may make in excess of the stated balance would be resisted by the bank. And in that view of the situation the depositor's formal demand for a greater sum and the bank's formal refusal to pay a larger sum would be unnecessary to perfect the depositor's cause of action, and likewise to set in motion the statute of limitations."

In the note following the case cited (87 A. L. R. 344), authorities are referred to which also support our conclusion on this point.

Giving appellant, then, the benefit of a most

liberal construction of his complaint, the next question to be considered is whether the three year or the six year statute applies. As above stated, appellant relies upon the existence of an alleged trust relationship between himself and his broker. He does not now base his cause of action against respondent upon the broker's check, nor does he, in the pleading upon which he stands, refer to any contract in writing, nor, as we read his complaint, does he seek to establish any right based upon any "liability, express or implied, arising out of a written agreement." Rem. Rev. Stat., § 157 [P. C. § 8162].

Appellant argues that, as between a depositor and his bank, this section (the six year) of the statute of limitations applies; and, of course, it often does, but in the pleading before us we find nothing upon which to base a holding that appellant's claim is governed thereby. On the contrary, it clearly appears that appellant's claim falls within paragraph 3 of Rem. Rev. Stat., § 159 [P. C. § 8166], providing that the three year period of limitation applies to "an action upon a contract or liability, express or implied, which is not in writing and does not arise out of any written instrument."

Appellant argues that

"There is nothing in the record to take the case of the depositor out of the six year statute of limitation of this state and there is no allegation as to when, if ever, the depositor had notice that the indorsement on the check was a forgery, other than appellant's charge that he advised the respondent in the month of January, 1931, which was within three years next before the filing of the fourth amended complaint."

This argument is answered by our holding above set forth that, by the return of the depositor's canceled checks, in so far as bringing in operation the

statutes of limitation is concerned, the depositor was then advised that the bank claimed that the checks paid had been properly paid and constituted lawful charges against the depositor.

In his original complaint, appellant alleged that the broker was indebted to him, and drew the check in payment of the indebtedness; that appellant's signature was forged as an endorsement on the check, and the check paid by the bank; that, thereafter, appellant presented the check to the bank, offering to endorse the same, and demanded payment thereof, which was refused. The last paragraph of the original complaint reads as follows:

"(7) That plaintiff has not received the whole, or any part of the proceeds of said check, that said First National Bank of Seattle, formerly Dexter Horton National Bank of Seattle, is indebted to this plaintiff in the sum of $1,023.86; that a copy of the check herein referred to, upon which this action is predicated, is hereto attached marked exhibit A, and is by reference made a part hereof."

The bank was the sole party defendant named in this complaint, which was prepared by counsel other than he who now represents appellant, and the action was then clearly an action against the bank, based on the check. This complaint stood, respondent having filed its answer thereto, until March 10, 1933, when an amended complaint was filed. In the amended complaint, it was alleged that respondent had converted the amount of the check to its own use, to appellant's damage.

It is the law of this, as of many other, jurisdictions that a complaint once filed tolls the statute of limitations, even though amended complaints may later be substituted. This rule, however, is subject to the exception that

"An amendment which introduces a new or different cause of action and makes a new or different demand does not relate back to the beginning of the action, so as to stop the running of the statute of limitations, but is the equivalent of a fresh suit upon a new cause of action, and the statute continues to run until the amendment is filed; and this rule applies, although the causes of action set forth in the original pleading and in the amendment arise out of the same transaction, and, by the practice of the state, a plaintiff is only required in his pleading to state the facts which constitute his cause of action, and although the original pleading demanded an amount large enough to cover both causes of action." 37 C. J. 1074.

This rule was considered by the court of civil appeals of Texas, in the case of *Henger & Chambers v. Owens Lumber & Loan Co.*, 17 S. W. (2d) (Tex. Civ. App.) 136, in which the court said:

"In the second count above quoted, the Lumber Company alleged a primary undertaking against appellants, though they still sought to hold Nash Bros. liable. Whether said pleading is sufficient to state a cause of action against appellants on an original undertaking by them or not, the result is the same. If insufficient, then only a secondary liability is pleaded from which appellants are relieved because the undertaking was not in writing. And if sufficient as pleading a primary obligation against appellants, then such pleading set up a different cause of action from that alleged in the original petition and was barred by the two-year statute of limitation urged against it. The amended petition was not filed for more than two years after the debt matured, and more than two years after suit was filed thereon. Under the tests laid down by Judge Brown in *Phoenix Lumber Co. v. Houston Water Co.*, 94 Tex. 456, 61 S. W. 707, the second count clearly constituted a different cause of action from that alleged in the first. It is obvious that there are defenses which appellants as sureties could urge against the Lumber Company in a suit by it against Nash Bros., which would not be available to appel-

lants if they were primarily liable as principals for the debt sued upon.''

Appellant does not challenge the exception to the rule, but contends that his fourth amended complaint does not set up a new cause of action; and that, consequently, the filing relates back to the date of the filing of the original complaint. 1 Bancroft's Code Pleading, § 563. After careful consideration, we are of the opinion that the fourth amended complaint states a cause of action entirely different from that pleaded in the original complaint. Assuming, without deciding, that the same cause of action is in substance pleaded in each of the amended complaints, if the filing of the original complaint did not toll the statute of limitations as to the cause of action upon which appellant now stands, it is evident that the period of limitation expired before the filing of the first amended complaint, and that the action is now barred.

In the original complaint, appellant sued respondent upon the broker's check. The pleading goes out of its way to make this plain. The cause of action stated in the amended complaint now before us is entirely different, being based upon the alleged existence of a trust relation between appellant and his broker, as a result of which appellant contends that respondent should be held to hold in trust for appellant an amount of money, which appellant prays be decreed to belong to him. The causes of action are entirely different, and it is clear that the filing of the original complaint failed to toll the statute of limitations, when considered in connection with the amended complaint now before us for consideration.

It must be held, then, that the three year statute of limitations applies to the situation here presented, and that this statute bars appellant's right of recovery upon his fourth amended complaint.

This holding renders it unnecessary to discuss the question of whether or not the fourth amended complaint states facts sufficient to constitute a cause of action. Upon this question, we express no opinion.

The judgment appealed from is affirmed.

MILLARD, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.

