UNITED STATES of America,
Plaintiff-Appellee,

v.

Frederick Lee KOELLER, Defendant-
Appellant.

No. 13778.

United States Court of Appeals
Seventh Circuit.

Dec. 5, 1962.

———◆———

Robert J. Vaneska, Tilg & Koch, Milwaukee, Wis., for appellant.

James B. Brennan, U. S. Atty., William J. Mulligan, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Defendant, Frederick Lee Koeller, was charged in a one count indictment with a violation of the Dyer Act, Title 18, U.S. C.A. § 2312.[1] Following a trial by jury, he was found guilty as charged in the indictment. He was committed to the

---

1. "§ 2312.  Transportation of stolen vehicles.  Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been

custody of the Attorney General for imprisonment for a period of two years. He now appeals from such judgment of conviction.

The indictment charges:

"That on or about the 22nd day of February, 1961 FREDERICK LEE KOELLER did unlawfully, knowingly and wilfully transport in interstate commerce from the City of Las Vegas, Nevada to Milwaukee, in the State and Eastern District of Wisconsin within the confines and jurisdiction of this Court, a certain stolen motor vehicle, to-wit: A 1960 White Chevrolet Impalla Convertible, Identification No. VIN 01867C108048; he, the said Frederick Lee Koeller, then and there knowing the said motor vehicle to have been stolen; in violation of Section 2312, Title 18, United States Code of Laws. * * "

The errors relied on for reversal arise out of the refusal of the trial court to grant defendant's motion to dismiss the indictment on the grounds that the Government did not prove a *prima facie* case; that the evidence as shown by the record was not such as to warrant the jury to find defendant guilty; and certain rulings on evidence.

The first two of such errors relate to whether there is substantial evidence to support the verdict of the jury and will be treated together.

■ It is well settled that in determining this question on appeal we must consider the evidence in the light most favorable to the Government and in the light of all inferences which the jury might reasonably draw from the evidence, resolving any conflicts in the evidence in favor of the Government. United States v. Marshall, 7 Cir., 266 F.2d 92, 94 (1959); United States v. Achilli, 7 Cir., 234 F.2d 797, 803 (1956), aff'd, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918; United States v. Iacullo, 7 Cir., 226 F.2d 788, 795 (1955), cert. denied, 350 U.S. 966, 76 S.

Ct. 435, 100 L.Ed. 839; United States **v.** Yager, 7 Cir., 220 F.2d 795, 796 (1955), cert. denied, 349 U.S. 963, 75 S.Ct. 895, 99 L.Ed. 1285.

The evidence established the following facts. Defendant and his wife lived in Milwaukee, Wisconsin. They had been experiencing marital difficulties. In an attempt to reconcile their differences, they flew to Las Vegas, Nevada on February 19, 1961 with their two children on United Air Lines. They registered at the Stardust Hotel that evening.

The next day, February 20, 1961, defendant rented the Chevrolet automobile in question from Henry L. Resnick, owner and operator of Brooks Rent-A-Car Agency in Las Vegas. The rental took place in front of the hotel and was under a printed rental agreement. Defendant executed the agreement in triplicate and retained one copy thereof.

The rental agreement provided for a rental fee of $11.00 per day and 10¢ per mile. It further provided that the automobile could not be taken out of the State of Nevada without the consent of rental agency. At the time of renting the automobile, defendant paid a cash deposit of $50.00 and stated that he wanted the car for two days. He said he would return the car to the bell captain at the hotel. There was no conversation about the clause in the agreement concerning taking the car out of the state.

Defendant did not return the car to the bell captain or the rental agency. He did not pay the rental for the use of the car. The agency never received any further communication of any kind from defendant.

From February 17, 1961 to February 23, 1961, certain airlines, *not* including United Air Lines, were on strike. During this period United Air Lines, on which defendant and his family had traveled from Milwaukee to Las Vegas, operated regularly scheduled direct flights from Las Vegas to Milwaukee without interruption.

stolen, shall be fined not more than $5,-000 or imprisoned not more than five

years, or both. June 25, 1948, c. 645, 62 Stat. 806."

After a few days in Las Vegas, defendant desired to leave and go to California, but his wife decided she would rather return to Milwaukee. They returned to Milwaukee, stopping en route at Salt Lake City, Utah. Defendant drove the Chevrolet home with his wife and children. The trip took three or four days. They arrived home on February 27, 1961 at approximately 5:00 o'clock A.M.

Defendant left his family at their home and told his wife he was going to take the car back to Las Vegas. His wife's suitcase was left in the car. He drove the car away from his home.

A short time later defendant parked the car in a parking lot in the rear of a tavern in Milwaukee, after getting consent of the bartender to do so. He never removed the car from this parking lot. About a week later he called the bartender and asked if the car was still there and, on learning that it was, said he would pick it up the next day. He failed to do so.

Subsequently, after an investigation by two detectives of the Milwaukee police department and two agents of the Federal Bureau of Investigation, the car was recovered by the detectives on April 18, 1961 in the parking lot behind the tavern where defendant had left it. His wife's suitcase was still in the car.

Defendant was arrested by the F.B.I. He stated to the agents that he had rented the car in Las Vegas and drove it to Milwaukee for the reason that he could not get airline or train reservations because of the airline strike. He said he had not picked up the car in the tavern parking lot because he had learned the police had made inquiries about the car and he was afraid to get it. He had a copy of the rental agreement at the time of his arrest.

■ Defendant's wife testified at some length. She admitted she had made false statements to the F.B.I. on two occasions concerning the occurrence under investigation. She was thoroughly impeached and the jury would have been warranted in discrediting her testimony.

The defense is predicated on the theory that the Government did not establish that defendant knew he could not take the vehicle out of the State of Nevada and consequently failed to prove that he transported the car in interstate commerce knowing it to have been stolen. Defendant did not testify in his own defense.

It is undisputed that defendant transported the car in question in interstate commerce. The only question is whether he did so knowing it to have been stolen.

■ After a consideration of the context in which the word "stolen" is used in 18 U.S.C.A. § 2312, the Supreme Court in United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), concluded that in the light of the purpose of the Act and its legislative history, the word "stolen" should not be interpreted so as to limit it to situations which at common law would be considered larceny. The Court finally concluded that "stolen" as used in the Act "includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." Id. at 417, 77 S.Ct. at 402.

The holding in Turley has been consistently followed by courts of appeal. As Judge Phillips stated in Tandberg-Hanssen v. United States, 10 Cir., 284 F.2d 331, 333 (1960): "Even if the possession of the automobile in the first instance by the defendant is lawful, the offense is committed if the defendant forms an intent to deprive the owner of the rights and benefits of ownership, converts the automobile to his own use and thereafter transports it in interstate commerce." See Gerber v. United States, 10 Cir., 287 F.2d 523, 524 (1961); Brown v. United States, 8 Cir., 277 F.2d 201, 203 (1960); Miller v. United States, 4 Cir., 261 F.2d 546, 547 (1958); Wilson v. United States, 6 Cir., 214 F.2d 313 (1954); United States v. Sicurella, 2 Cir., 187 F.2d 533, 534 (1951).

The trial court fully and correctly instructed the jury on this proposition consistent with the foregoing holdings.

We have carefully examined the record in this case. The record gives overwhelming support to the establishment of a *prima facie* case and to the verdict of the jury. We hold that the trial court did not err in ruling adversely to defendant on this issue.

The evidence established that the rental agency's records, including its copy of the agreement executed by defendant, were destroyed by fire in July, 1961. Defendant did not produce his copy at the trial. The witness Resnick, owner of the rental agency, testified concerning the loss by fire of his copy of the rental agreement. He identified defendant, recalled the rental of the car to him and stated the terms and restrictions in the printed agreement. *In answer to an inquiry by the trial court,* he identified a blank standard form of rental contract used by his agency and pointed out changes made therein since February, 1961 concerning minimum mileage requirements and insurance coverage. In all other respects the blank form of contract was similar to the one defendant executed. On defendant's objection, the court excluded the form when it was offered in evidence.

Defendant claims prejudicial error because the witness was permitted to have this copy while testifying. There is no merit in this contention. The witness had previously given his testimony on this subject based on his own personal knowledge and recollection. The court sustained the objection to the introduction of the blank form because it was not an identical copy and observed that the Government had evidence on the transaction to submit to the jury. The matter was fully and properly covered by parol evidence.

The objection made by defense counsel was to the introduction of the exhibit in evidence. After the witness was examined and cross-examined concerning it, the exhibit was excluded. Defendant's claim of error borders on the trivial. There was no error.

We have not deemed it necessary to set out in detail the evidence of the police detectives and F.B.I. agents. It fully supports the Government's case. Defendant gains no comfort from it.

Defendant had a fair trial. The record demonstrates to our satisfaction that the jury was fully warranted in finding him guilty of the offense charged in the indictment.

The judgment of the district court is affirmed.

Affirmed.