**UNITED STATES of America,**
**Appellee,**

v.

**Walter M. DILLINGER, Appellant.**

**No. 9366.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 2, 1964.

Decided Feb. 5, 1965.

Edwin P. Munson, Richmond, Va. (Court-assigned counsel) [Williams, Mullen & Christian, Richmond, Va., on brief]. for appellant.

Ronald L. Gainer, Attorney, Department of Justice (Claude V. Spratley, Jr., U. S. Atty., and James A. Oast, Jr., Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, BOREMAN and J. SPENCER BELL, Circuit Judges.

HAYNSWORTH, Circuit Judge:

Convicted of the interstate transportation of a stolen automobile, knowing it to have been stolen,[1] Dillinger has appealed. He contends primarily that the evidence was insufficient to support the conviction. Secondarily, he complains of a witness' oblique reference to his prior criminal record and of the judge's handling of a post conviction suggestion of the appropriateness of a mental examination. We find no reversible error in the proceedings.

At approximately 8:30 o'clock in the evening, Friday, April 12, 1963, Dillinger rented a car from a rental agency in Jacksonville, Florida. He did so in his own name, but he furnished false employment information. He promised to return the car by 8:30 o'clock in the evening two days later, on Easter Sunday.

According to the testimony of an FBI agent, who subsequently arrested Dillinger in the District of Columbia, Dillinger told him that he and a friend, Fry, had gone to Jacksonville for the purpose of stealing cars and cashing some checks. In Jacksonville, Dillinger had become acquainted with a waitress. The three of them—Dillinger, the girl, and Fry—left Jacksonville in the rented automobile early Saturday morning. The girl thought their destination was somewhere in Tennessee, but she testified that, at some point in North Georgia, she became aware that they were not going to Tennessee but were going to North Carolina. They did go to two places in North Carolina, and thence on to Norfolk, Virginia. From there they made two trips back into North Carolina and returned to Norfolk, later abandoning the rental automobile in a Norfolk parking garage.

Fry rented another automobile in Norfolk, in which the three drove to the District of Columbia.

During at least the early stages of their travels, the girl knew Dillinger by an assumed name, though she was unable to state what name he used when they checked in at the motels at which they stopped en route from Jacksonville to Norfolk or at the hotel in Norfolk. She only knew Dillinger registered himself and her as man and wife.

The word "stolen" as used in the Dyer Act includes much more than common law larceny. It encompasses any taking with the intention to convert the vehicle to the use of the taker and wrongfully to deprive the owner of his possessory rights and the benefits of the ownership.[2] Such a taking can occur, though possession is acquired by means of a rental agreement.[3]

Moreover, it is unnecessary that the defendant's intention be to deprive the owner of the use of the vehicle forever.[4] It is enough that he did not intend to return the automobile, but intended to use it for his own purposes as long

1. Title 18 U.S.C.A. § 2312.

2. United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430; Boone v. United States, 4 Cir., 235 F.2d 939.

3. Jones v. United States, 4 Cir., 340 F.2d 599; Patterson v. United States, 5 Cir., 324 F.2d 310; United States v. Welborn, 4 Cir., 322 F.2d 910; Jarvis v. United States, 9 Cir., 312 F.2d 563; United States v. Koeller, 7 Cir., 310 F.2d 409; Tandberg-Hanssen v. United States, 10 Cir., 284 F.2d 331, 333. See Miller v. United States, 4 Cir., 261 F.2d 546.

4. Schwab v. United States, 8 Cir., 327 F.2d 11; Berard v. United States, 9 Cir., 309 F.2d 260; United States v. Sheffield, D.C.Md., 161 F.Supp. 387. Also see United States v. Welborn, 4 Cir., 322 F.2d 910.

as it served his convenience and thereafter to abandon it or dispose of it.

■ The defendant's intention, when he leased the automobile and when he first transported it in interstate commerce, can be shown by his subsequent conduct.[5]

■ The evidence here abundantly establishes Dillinger's intention when he transported the automobile from Jacksonville to Norfolk. His use of false representations in obtaining possession of the vehicle, his retention of it for many days beyond the day of its promised return, his abandonment of it at a place far distant from Jacksonville, and his failure ever to notify the lessor of the whereabouts of the vehicle, all combine to warrant the jury's finding beyond a reasonable doubt that, from the moment he leased the vehicle, he *never intended its return.* This is true without reference to Dillinger's post arrest admission that he had gone to Jacksonville for the purpose of stealing automobiles, but in light of the fact that the testimony discloses no event occurring between the time the vehicle was leased and the time of its abandonment in Norfolk which might conceivably have altered Dillinger's intention.

On appeal, Dillinger's court-appointed counsel insistently contends that the evidence did not clearly show the wanderers did not arrive in Norfolk on Easter afternoon within the period of the original lease. In doing so, he relies upon a reference the girl made in her testimony to events which occurred one night when they stopped at a motel, after which they drove the next day to Norfolk. He infers from that portion of her testimony that they spent only one night en route from Jacksonville to Norfolk. The girl elsewhere testified, however, that they did not arrive in Norfolk until several days after Easter, while Dillinger told the arresting FBI agent that they

had arrived in Norfolk on the 18th, which would have been the Thursday after Easter. Moreover, defense counsel cross-examined the girl about how they checked in at the motels in which they stopped en route to Norfolk, the names they used and similar matters. The number of those motels was never specified, but examiner and witness repeatedly and consistently referred to them in the plural.

■ Whether or not the travelers arrived in Norfolk before the expiration of the period of the lease, however, is an irrelevance. If they drove the last leg of their journey from North Carolina to Norfolk on Easter Sunday, Dillinger clearly did not then intend to return the car to the lessor in Jacksonville that evening. Moreover, all of the circumstances and events following the lease of the vehicle go to establish Dillinger's intention from the outset, so that its first transportation in interstate commerce was a violation of § 2312 notwithstanding the fact that the term of the lease had not expired. If he had rented the vehicle for a week and had procured false documents for it and sold it in Norfolk, Virginia, on the sixth day, he would have been guilty of a violation of the Act, notwithstanding the fact that its interstate transportation had occurred entirely within the period of the lease.[6]

We conclude that the judgment of conviction is abundantly supported by the evidence.

■ As we have observed, the FBI agent who arrested Dillinger testified as to statements made to him by the defendant immediately after the arrest. He testified that he had been told by Dillinger that his friend, Fry, whom he had met in the Atlanta pentitentiary, came to Dayton, Ohio, after which the two set about the journey which has now resulted in this prosecution. There was no objection at the time to the reference to the Atlanta penitentiary, but appellate

5. Jones v. United States, 4 Cir., 340 F.2d 599; Jarvis v. United States, 9 Cir., 312 F.2d 563; *United States v. Koeller,* 7 Cir., 310 F.2d 409.

6. See Jones v. United States, 4 Cir., 340 F.2d 599.

counsel now suggests that we ought to notice the court's disregard of it as plain error. We think not.

The reference to the Atlanta penitentiary was of such a passing nature, and so apparently inadvertent, that it ought not to occasion the necessity of a new trial. Nothing else occurred in the trial to call attention to the reference or to highlight it in any way. It was the kind of thing that more than likely went unnoticed by the jury as it did by the court.

It has frequently been held that a new trial was not required by similar statements by a witness so long as they appeared to have been incidental and inadvertent.[7] Indeed, in Means v. United States, 62 App.D.C. 118, 65 F.2d 206, the Court dealt with almost the precise reference, the witness quoting the defendant as referring to a man whom he had met in the Atlanta penitentiary.

■ Finally, the defendant complains that the Court did not order a sanity hearing under the provisions of Title 18 U.S.C.A. § 4244, when possible need of such a hearing was suggested after the jury had brought in its verdict and been discharged. The suggestion came from Dillinger. He understood that a letter had been sent by the FBI in Ohio to Judge Hoffman[8] expressing an opinion about the appropriateness of a sanity hearing. The Court responded to the suggestion and saw no reason why an examination should not be had. It com-

mitted the defendant, without objection, to study under the provisions of Title 18 U.S.C.A. § 4208(b). He was given a psychiatric examination under that section, and it was reported back that Dillinger is "neither psychotic nor seriously neurotic."

Dillinger complains that he should have been committed for an examination under Title 18 U.S.C.A. § 4244 rather than under § 4208(b). Nothing was said at the time to suggest to the Court the appropriateness of the use of § 4244, nor any advantage of a commitment under that Section over a commitment for study under § 4208(b).

If any mistake was made, of course, a new trial would not be required. There was nothing to suggest the possible need of a sanity hearing until after the verdict was in and the jury was discharged. If it should be thought that the judge might more appropriately have used § 4244, that could still be done without granting the defendant a new trial as a preliminary. However, the record contains no basis for a conclusion that an examination under § 4244 then or now would be more appropriate, or that the psychiatric examination of him when committed under § 4208(b) was inadequate.

We find no reversible error. The judgment of conviction will be affirmed.

Affirmed.

7. Ashton v. United States, 116 U.S.App. D.C. 367, 324 F.2d 399, 400; Lyda v. United States, 9 Cir., 321 F.2d 788, 791, 792; White v. United States, 4 Cir., 279 F.2d 740, 749; Reistroffer v. United States, 8 Cir., 258 F.2d 379, 392–393; United States v. Giallo, 2 Cir., 206 F.2d 207, 209–210; United States v. Henderson, 7 Cir., 185 F.2d 189, 192; Means v. United States, 62 App.D.C. 118, 65 F.2d 206, 207.

8. Judge Walter E. Hoffman of the Eastern District of Virginia. The trial was in Norfolk, where Judge Hoffman resides, but he was not the trial judge.