**Bernard Joseph McCARTHY, III,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 10103.**

United States Court of Appeals
Tenth Circuit.

Nov. 29, 1968.

Joseph H. Mercer, Albuquerque, N. M., for appellant.

John Quinn, U. S. Atty., and John A. Babington, Asst. U. S. Atty., Albuquerque, N. M., for appellee.

Before WARREN L. JONES,* Senior Circuit Judge, and BREITENSTEIN and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This appeal is taken from a judgment of conviction and a sentence for violation of the National Motor Vehicle Theft Act, 18 U.S.C. § 2312. The indictment charged interstate transportation by appellant in November, 1967, of a Lincoln Continental automobile from Washington, D.C., to Albuquerque, New Mexico, with knowledge that the car had been stolen. Prosecution evidence showed appellant's use at Washingon of a stolen driver's license and Hertz credit card and his forgery of their owner's signature on a rental contract to obtain use of the car, and driving of the car by appellant to New Mexico where he was apprehended.

Appellant urges three contentions for reversal: (1) that the instruction defining a stolen vehicle under the Act was in error; (2) that the charge erred in saying that it was not necessary to intend to deprive the owner permanently of his rights and benefits in the vehicle for it to be "stolen;" and (3) that proof was insufficient that the car was stolen within the meaning of the Act, so that denial of the motion for judgment of acquittal was error. From the evidence which the jury could believe and the instructions given, we conclude that no ground for reversal is shown.

Proof by the prosecution tended to establish these facts. In November, 1967, the wallet of one Hoffman, containing several credit cards and his driver's license, disappeared. Appellant admitted paying $100 for the wallet and these contents. He used Hoffman's Hertz credit card at the Newark Airport to rent a Cadillac which he drove to Washington, D. C. He appeared at Washington National Airport, complaining that the Cadillac used excessive oil, and exchanged it for a Lincoln Continental. The Hertz attendant from Washington identified appellant as the person who got the Continental. Appellant told her he would drive the car back to New York and turn it in that day. He produced Hoffman's

* Of the Fifth Circuit, sitting by designation.

Hertz credit card and driver's license and the rental agreement from New York, all of which were used by the attendant in preparing the agreement on the Continental. The attendant testified that the car would not have been rented to appellant if she had known that the signature on the agreement was forged, that the Hertz credit card and driver's license did not belong to appellant, and that he was not authorized to use them.

The Continental was released to appellant on November 14. The agreement stated that the car would be turned in on November 15. There was no restriction in the contract as to the area in which the vehicle would be used. Appellant appeared at the Columbus, Ohio, Hertz office and there obtained a notation on the agreement that it was extended to November 19. This Hertz representative testified that appellant said he would make it back to Washington in three or four days, and made no mention of going to New Mexico. She said that she relied on the rental contract which appellant produced in making the extension. Appellant was also identified as having appeared at the Hertz St. Louis office, where he attempted to rent another car with the use of Hoffman's Hertz credit card and driver's license. The discrepancy between appellant's appearance (he is 37) and the 60 year age stated on Hoffman's driver's license was noticed. When a call to the police was mentioned, appellant left and the license and card were retained by the attendant.

Appellant was stopped while driving the Continental on November 18 by the New Mexico State Police. He was near Albuquerque and heading west, and said he was going to California. He produced Hoffman's other credit cards and the rental agreement. During a subsequent interview with a Special Agent of the Federal Bureau of Investigation, appellant admitted he had known that the Hertz card and other credit cards were stolen. He traced his route as having been from Columbus, Ohio, to Memphis, and stated he was en route to California. There was no report known to the New Mexico State Police or to the Special Agent that the Continental had been reported stolen. By telegraph the Agent learned that the credit cards involved had been stolen. This indictment followed, and the jury found appellant guilty of the Dyer Act offense.

Appellant's first claim of error is that the instructions unjustifiably expanded the statutory term "stolen," as construed in United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957). In defining the term "stolen," the trial court charged:

"Whenever a motor vehicle, which is the property of one person, is acquired or thereafter possessed as a result of some wrongful or dishonest act, such as fraud or forgery, whereby another person either willfully obtains or thereafter willfully retains possession of such property without or beyond the permission or beyond any permission given and with the intent to deprive the owner of the benefits of the ownership, such motor vehicle is a stolen motor vehicle as that term is used in these instructions.

"To establish the crime of interstate transportation of a stolen motor vehicle it is essential to prove that at the time the stolen vehicle was transported across state lines by the defendant, he had knowledge that it was stolen and that he had the specific intent to deprive the owner of the rights and benefits of ownership. It is not necessary that defendant have the intent to permanently deprive the owner of such rights and benefits.

"In determining whether defendant had the requisite intent, the jury should consider all the facts and circumstances in the case. In other words, it is up to the jury to determine whether or not the vehicle was stolen and whether or not it was transported across the state line with a specific intent that I mentioned."

■■ We conclude that the instruction properly followed the substance of the definition of "stolen" as including all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common law larceny. United States v. Turley, supra, at 417, 77 S.Ct. 397; Stone v. United States, 385 F.2d 713 (10th Cir. 1967), cert. denied, 391 U.S. 966, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968); Smith v. United States, 385 F. 2d 252 (8th Cir. 1967); United States v. Dillinger, 341 F.2d 696 (4th Cir. 1965); Lake v. United States, 338 F.2d 787 (10th Cir. 1964). By the use of the phrase "wrongful or dishonest act," appellant contends that the instruction improperly departed from the definition in *Turley* referring to "felonious takings." We find, however, that the charge rightly dealt with the meaning of the term "stolen" as applied to the facts before the jury by referring to a wrongful or dishonest act, such as fraud or forgery. The reference to a wrongful or dishonest act, without use of the term "felonious," did not depart from the substance of the meaning of the statute. Without use of the term "felonious," the meaning of "stolen" in the Act has been defined as encompassing any taking with intent to convert the vehicle to the taker's use and wrongfully depriving the owner of his possessory rights and benefits of ownership. United States v. Dillinger, supra, at 697. Similarly, in *Lake,* supra, this Court defined the term with reference to the specific facts there present as including " * * * any taking by trick or other artifice with an intent to deprive the owner of the rights and benefits of ownership." 338 F.2d at 789. We conclude that the instruction afforded appellant the substance of the proper definition of the statutory term.

■ Second, appellant attacks the instructions for saying that it is not necessary that it was intended to permanently deprive the owner of the rights and benefits of ownership for the car to have been "stolen" within the meaning of the Act. This Court did approve an instruction referring to " * * * the intent to permanently deprive the owner of the rights and benefits of ownership * * *." in Stone v. United States, 385 F.2d at 715, as not prejudicial to a defendant. However, the point raised here by appellant was not involved. As have other courts, we conclude that a vehicle may be "stolen" within the meaning of the Act, whether the intent was to deprive the owner of his rights and benefits in the vehicle permanently, or only so long as it suited the purposes of the taker. Smith v. United States, 385 F.2d 252 (8th Cir. 1967); United States v. Dillinger, 341 F.2d 696 (4th Cir. 1965); Schwab v. United States, 327 F.2d 11 (8th Cir. 1964); Berard v. United States, 309 F.2d 260 (9th Cir. 1962). The charge properly defined the term "stolen" as intended by the statute.

■ Appellant lastly argues that the prosecution evidence as a whole made out no case that the Continental was "stolen." The fact that appellant was apprehended on November 18, one day before expiration of the purported contract, is stressed. But there was more than ample proof that car and contract were obtained by fraud and forgery at the outset, so that the jury could find that the car was "stolen," all the while. Evidence of obtaining vehicles by such devices is a sufficient basis for finding them to have been "stolen" within the meaning of the Act, see Stone v. United States, 385 F.2d 713 (10th Cir. 1967), cert. denied, 391 U.S. 966, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968), and Lake v. United States, 338 F.2d 787 (10th Cir. 1964), even if the rental term has not expired. See United States v. Dillinger, 341 F. 2d 696, 698 (4th Cir. 1965). These and the remaining contentions of appellant we find insufficient as grounds for disturbing the conviction.

Affirmed.