**UNITED STATES of America**
**v.**
**Algylee Bobbe WILSON, Appellant.**
**No. 18794.**

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1970.

Decided Jan. 13, 1971.

David Freeman, Philadelphia, Pa., for appellant.

Barry W. Kerchner, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, VAN DUSEN and ROSENN, Circuit Judges.

OPINION OF THE COURT

BIGGS, Circuit Judge.

Wilson appeals from a conviction of a violation of the Dyer Act, 18 U.S.C. § 2312, which provides: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both." Wilson purchased a 1968 Dodge Charger from Quaker City Dodge in Philadelphia on November 4, 1967, giving in part payment a check for $500 drawn on the Girard Trust Bank. Wilson signed the check using the name "Seymour Fleck." This check was later returned to the automobile agency unpaid and efforts to locate the appellant at the telephone number given on his credit application proved unsuccessful. One "Seymour Fleck," whose telephone number appeared on the credit application testified that he never had any dealings with Quaker City Dodge, did not know the appellant, and did not have a checking account at Girard Trust Bank. Two other government witnesses, the salesman and the sales manager, identified the appellant as the person who purchased the automobile in question using the name "Seymour Fleck."

Wilson was subsequently arrested in California for a traffic violation. During an interview at the Los Angeles County Jail by a member of the FBI Wilson admitted an association with the Dodge Charger but stated that Seymour Fleck purchased the automobile for him

in consideration for $2,000. A detective from the Philadelphia Police Department testified that the appellant told him during a lunch break during the trial that he paid $3,000 in cash for the automobile and then drove it to California.

On this appeal Wilson argues first that the word "stolen" in the Dyer Act should be construed to mean simply common law larceny and should not be extended to a taking by false pretense. A 1957 Supreme Court decision, United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430, is dispositive of this issue. In *Turley*, the Court held that "'[s]tolen' as used in 18 U.S.C. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." Id. at 417, 77 S.Ct. at 402. In fact, the Court gives "false pretenses" as an example of a felonious taking proscribed by the statute.

Wilson also argues that his statement to the Philadelphia detective that he drove the automobile in question from Philadelphia to California is uncorroborated by independent evidence of such transportation and is therefore insufficient to sustain the conviction. In Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the Supreme Court ruled, with respect to the sufficiency of evidence to corroborate an admission [1] or confession, that the corroborative evidence need not be sufficient, independent of the statements of the accused, to establish the corpus delicti, and what the government must do, in order to furnish sufficient corroboration, is to introduce substantial evidence which would tend to establish the trustworthiness of the statement. Also see Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954).[2] In order to corroborate a confession or admission, it is unnecessary for the prosecutor to introduce substantial independent evidence of each element of the offense with which the defendant is charged. Landsdown v. United States, 348 F.2d 405, 409 (5 Cir. 1965).

There is substantial independent evidence to corroborate Wilson's confession or admission that he drove the Dodge Charger from Philadelphia to California. In other parts of Wilson's admission he stated that (1) he purchased the Dodge Charger from Quaker City Dodge, and (2) he was stopped by a policeman in California. The latter two parts of Wilson's admission were corroborated by (1) the testimony of the salesman and sales manager of Quaker City Dodge that Wilson was the individual who purchased the Dodge Charger, and (2) the testimony of the FBI agent who stated that Wilson was stopped by a policeman in California. Since two parts of Wilson's admission were corroborated by other evidence, this established the trustworthiness of the entire admission and authorized the prosecutor to prove the element of interstate transportation solely by Wilson's admission that he drove the Dodge Charger from Philadelphia to California. Landsdown v. United States, 348 F.2d 405, 409 (5 Cir. 1965).

Wilson also maintains that the return of the $500 check unpaid was not proven by competent and admissible evidence and that such proof was necessary to establish that the automobile was "stolen" within the meaning of the Dyer Act. The salesman and sales manager of Quaker City Dodge both testified that the check was returned unpaid.[3] Al-

1. Although Wilson's statement to the Philadelphia Police detective is exculpatory, it constitutes an admission of one essential element of a prosecution under the Dyer Act, to wit, the interstate transportation of an automobile. See Wong Sun v. United States, 371 U.S. 471, 487 n. 13, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

2. For a comprehensive discussion of this problem, see Annot., Corroboration of Extrajudicial Confession or Admission, 45 A.L.R.2d 1316.

3. Appellant also objects to the following instruction given by the trial court:

"I now have in my hand the written exhibits which, of course, will come

though their testimony was largely based upon what they had been told by the Secretary-Treasurer of the agency, they did have personal knowledge of the return of the check. They both identified the returned check as the check which had been tendered to the agency by the defendant. Also, the sales manager testified, without objection, that the agency never received the $500 represented by the check.

Furthermore, even if the testimony of the salesman and sales manager be deemed insufficient to establish that the check was returned unpaid, this does not aid the appellant's case. Whenever a motor vehicle, which is owned by one person, is acquired by another person as a result of fraud or forgery, whereby such other person deprives the original owner of the benefits of his ownership, such vehicle is considered "stolen." See McCarthy v. United States, 403 F.2d 935, 937–938 (10 Cir. 1968). Also see Lake v. United States, 338 F.2d 787, 789 (10 Cir. 1964). Thus, fraud and forgery in the procurement of the vehicle is sufficient to establish that the vehicle was "stolen." The fact that the check was returned unpaid is only evidence of such fraud or forgery. It is not essential to prove the return of the check unpaid if there is other competent evidence of the fraud or forgery. In the instant case, there was other competent evidence of the fraud or forgery. Both the salesman and the sales manager identified the appellant as the individual who purchased the automobile in question using the name "Seymour Fleck." Seymour Fleck testified that he had never dealt with Quaker City Dodge and that he had never had an account at Girard Trust Bank.

The judgment of the District Court will be affirmed.

[sic] in the classification of documentary evidence, and circumstantial evidence would concern itself with how these items tie in with other matters that you have heard in the trial. Now I am looking at G–1 which is a check which was exhibited and purports to be signed by Seymour Fleck written on the Girard Trust Company. It has no number. It is dated 11–5–67. It is payable to Quaker City Dodge. It is for $500. You will notice if you look at the check—it has been testified to—it has not been paid. If you look at the back, it has no marks perforating it. *When you get your bank balance back, you will find your check is marked with a cut mark, p-a-i-d.* Now I am not concerned with the writing on the front, 'Not authorized to sign.' Don't base any verdict on 'No authority to sign.'

"The government contends that this is a forgery, the check is a forgery, and that the $500 check was presented by the defendant in this case, and I thought I would examine that with you this morning and point that out to you." (Emphasis added.)

Since there was no evidence of the Girard Trust Bank procedure with respect to stamping checks, this instruction amounted to a charge that the jury could take judicial notice of the fact that banks stamp and perforate checks "p-a-i-d" when they are in fact paid. Judicial notice can be taken of facts of common knowledge relating to banks and banking procedure. 31 C.J.S. Evidence § 29, at pp. 911–915. See *e. g.*, Bruce v. First Nat. Bank of Seattle, 180 Wash. 614, 41 P.2d 779 (1935) (judicial notice taken of custom of banks to return canceled checks on first of month following payment thereof); Maryland Title Guarantee Co. v. Alter, 167 Md. 244, 173 A. 200 (1934) (judicial notice taken of practice of making collections through banks and clearing houses requiring one day in addition to day of deposit in collecting bank); Ali v. Haff, 114 F.2d 369 (9 Cir. 1940) (judicial notice taken of the fact that checks pass through a bank for payment and cancellation, and are then returned to the maker); Levin v. Katzenbach, 262 F.Supp. 951 (D.D.C.1966), reversed on other grounds sub nom. Levin v. Clark, 133 U.S.App.D.C. 6, 408 F.2d 1209 (1967) (judicial notice taken of the fact that banks keep microfilm or other photographic copy of each check drawn and cashed by its customers on account in its bank).

We need not decide whether the trial judge erred in giving this instruction for, even if the court was in error, it was harmless error. As stated, *infra*, the fact of nonpayment of the check is not necessary to establish that the vehicle was "stolen" within the meaning of the Dyer Act.