UNITED STATES of America

v.

Darryl D. FELDER.

Crim. No. 82–00242(01).

United States District Court,
E.D. Pennsylvania.

Jan. 2, 1983.

Samuel A. Forstein, Asst. U.S. Atty., Philadelphia, Pa., for United States of America.

Stephen Robert LaCheen, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, DISCUSSION AND ORDER

HANNUM, District Judge.

On November 18, 1982, defendant pled guilty to Count I of Information No. 82–00242 which charged him with a violation of 18 U.S.C. § 641. Also on November 18, 1982, defendant waived his right to a jury trial with respect to Count II of the Information. Count II charges defendant with violating 18 U.S.C. § 371 by allegedly conspiring to "steal, embezzle, purloin and convert checks drawn on the United States Treasury, in violation of 18 U.S.C. § 641."

Count II has been submitted to this Court on a case-stated basis by way of a stipulation of the statements of four witnesses, and two exhibits (Docket Entry No. 24). Both parties have submitted proposed findings of fact and conclusions of law (Docket Entry Nos. 33, 34, and 35).

The Court at this time notes that defendant Darryl D. Felder has placed his signature on Page 4 of the stipulation of testimony, along with the signatures of Peter F. Vaira, Esquire, United States Attorney; Samuel M. Forstein, Esquire, Assistant United States Attorney; and Stephen R. LaCheen, Esquire, counsel for defendant.

On the basis of the stipulation of testimony the Court hereby makes the following findings of fact:

1. Defendant Felder was employed at the United States Department of Treasury, Division of Disbursement, Bureau of Government Financial Operations, 5000 Wissahickon Avenue, Philadelphia, Pennsylvania, as a part-time Pre-Sorter of United States Treasury checks as of July 2, 1982, on which date he reported to work.

2. On July 2, 1982, William Hotz, a Special Agent with the United States Secret Service, conducted a videotaped surveillance of Defendant Darryl Felder during his working hours at the Bureau of Government Financial Operations. Robert L. Langdon, the Regional Disbursing Director, United States Department of Treasury, Division of Disbursement, Bureau of Governmental Financial Operations, observed Defendant Felder along with Special Agent Hotz during the videotaping.

3. At approximately 11:57 a.m., Defendant Felder was observed and videotaped as he removed a package of checks belonging to the United States Government from an already pre-sorted tray, placed the checks on a work table, looked around, and then bent down beneath the work table. Defendant then stood up, at which time the checks no longer were in sight.

4. Shortly thereafter, Hotz and Langdon observed defendant walk out the front door of the disbursing center.

5. Defendant Felder was not authorized or permitted to remove checks from the disbursing center.

6. When defendant left the facility, he was followed by Special Agent Hotz and David Benner, another Special Agent of the United States Secret Service.

7. Special Agent Hotz, accompanied by Special Agent Benner, watched Defendant Felder open the door of an automobile. The agents then approached and searched Defendant Felder. They found a bundle of 31 United States Treasury tax refund checks, secured by two rubber bands, on the

inside of defendant's right lower leg underneath his knee sock.

8. The 31 checks, which had a value of $53,025.20, were the property of the United States Government.

9. After the checks were taken from Defendant Felder's person, he was placed under arrest and orally advised of his Miranda rights, which he stated that he understood.

10. Thereafter, defendant was transported by Special Agents Benner, Dennis Satterlee, and Thomas Abraham to the Philadelphia office of the United States Secret Service.

11. After defendant's arrival at the Secret Service office, he executed a written form entitled "Warning and Consent to Speak" (Exhibit A to the Stipulation of Testimony, Docket Entry No. 24). Special Agent Benner signed the form as a witness.

12. After defendant executed the consent form, he was interviewed by Special Agent Hotz and gave a voluntary statement. (Exhibit B to the Stipulation of Testimony, Docket Entry No. 24). This statement truly and accurately reflects the words of defendant. The statement was witnessed by Special Agent Benner and John Delgado, a Postal Inspector employed by the United States Postal Service in Philadelphia, Pennsylvania.

13. Defendant Felder's statement (Exhibit B) was typed, and defendant then signed and dated it. Special Agent Hotz signed the statement as a witness.

14. In his statement, Defendant Felder admitted stealing the 31 checks on July 2, 1982. Defendant stated that the theft occurred as a result of a telephone call he received the previous day from an individual named "Charlie" who asked him if he could "get anything."

15. In his statement, Defendant Felder also admitted that he had stolen checks for approximately the last two years from the Wissahickon Avenue facility and that the key to the operation was an individual he knew as "Kingie." Defendant admitted that during the past two years he made several deliveries to "Kingie." Defendant stated that he identified Philadelphia Police Department Photo No. 372912 as the person known to him as "Kingie." Defendant further stated that the name on the photo was James King. Defendant stated that "Kingie" told defendant what type of checks to steal and that "Kingie" sometimes refused taking checks from defendant because of the small amounts.

16. In his statement, defendant stated that an individual he knew as Malley Evans sometimes made pickups of the checks from defendant for "Kingie." Defendant further stated that "Charlie," who called defendant on July 1, 1982, is a friend of Malley's.

The Court now makes the following conclusions of law:

1. The surveillance of defendant conducted on July 2, 1982, was permissible.

2. United States Secret Service Agents William Hotz and David Benner had a reasonable basis to stop and search Defendant Felder on July 2, 1982, after observing him commit a potential violation of federal law.

3. When they found a bundle of 31 Government checks on Defendant Felder's person outside the disbursing center on July 2, 1982, United States Secret Service Agents Hotz and Benner had probable cause to arrest Defendant Felder.

4. The oral and written advice of rights given to Defendant Felder on July 2, 1982, by agents of the United States Secret Service were satisfactory under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. On July 2, 1982, Defendant Felder made a knowing and voluntary waiver of his rights.

6. On July 2, 1982, Defendant Felder knowingly and voluntarily furnished to Government agents the statement designated in the record as Exhibit B to Docket Entry No. 24.

7. The essential elements of proof of a violation of 18 U.S.C. § 371, in this case are as follows:

1. An agreement between two or more persons to commit a violation of 18 U.S.C. § 641;

2. That the defendant knowingly and willfully became a member of a conspiracy; and

3. That thereafter one or more of the conspirators knowingly committed a charged overt act in furtherance of an object or purpose of the conspiracy. *See United States v. Andreen,* 628 F.2d 1236, 1248 (9th Cir.1980); *United States v. Trowery,* 542 F.2d 623, 626 (3d Cir.1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977).

A "conspiracy" is a combination or agreement of two or more persons to join together to attempt to accomplish some unlawful purpose. It is a kind of "partnership in criminal purpose" in which each member becomes the agent of every other member. The gist or essence of the offense is a combination or mutual agreement by two or more persons to disobey, or disregard, the law.

The evidence in the case need not show that the alleged members of the conspiracy entered into any express or formal agreement; or that they directly stated between themselves the details of the scheme and its object or purpose, or the precise means by which the object or purpose was to be accomplished. Similarly, the evidence in the case need not establish that all of the means or methods set forth in the information were, in fact, agreed upon to carry out the alleged conspiracy, or that all of the means or methods which were agreed upon were actually used or put into operation. Neither must it be proved that all of the persons charged to have been members of the conspiracy were such, nor that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

What the evidence in the case must show beyond a reasonable doubt is:

(1) That two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the information;

(2) That the defendant willfully became a member of such conspiracy.

One may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So, if a defendant, with an understanding of the unlawful character of a plan, knowingly and willfully joins in an unlawful scheme on one occasion, that is sufficient to convict him for conspiracy even though he had not participated at earlier stages in the scheme and even though he played only a minor part in the conspiracy.

Of course, mere presence at the scene of an alleged transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator.

Further, one does not become a member of a conspiracy simply because of receiving information concerning its nature and scope; a defendant must have had some sort of a stake in the success of the venture, or must in some sense promote the venture, making it his own.

The crime of conspiracy is seldom susceptible of proof by direct evidence. Proof of the crime may rest, as it frequently does, on indirect or circumstantial evidence. The existence of a conspiracy may be inferred from evidence of related facts and circumstances from which it appears, as a reasonable and logical inference, that the activities of the participants in the criminal venture could not have been carried on except as the result of a preconceived scheme or common understanding.

■ 8. A confession must be corroborated to sustain a conviction, but the corroborative evidence need not be sufficient, independent of the confession, to establish the corpus delicti. The corroboration must be sufficient to establish the reliability of the confession beyond a reasonable doubt. Thus, what the Government must do is establish the trustworthiness of the statement. *See Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164–5, 99 L.Ed. 101 (1954); *United States v. Wilson,* 436 F.2d 122 (3d Cir.1971), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971).

■ 9. In order to corroborate a confession or admission, it is unnecessary for the prosecutor to introduce substantial independent evidence of each element of the offense with which the defendant is charged. *See United States v. Wilson,* 436 F.2d 122, 124 (3d Cir.1971), *cert. denied,* 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971).

■ 10. A confession may be corroborated in a number of ways. A degree of corroboration may be found in the detailed nature of the confession itself, or in the recital of facts that would be unknown to anyone other than the criminal. One available mode of corroboration is for independent evidence to bolster the confession itself and thereby prove the offense through the statement of the accused. *See Smith v. United States,* 348 U.S. 147, 156, 75 S.Ct. 194, 199, 99 L.Ed. 192 (1954); *United States v. Micieli,* 594 F.2d 102, 108–109 (5th Cir.1979); *United States v. Gresham,* 585 F.2d 103, 106 (5th Cir.1978).

■ 11. The evidence in this case established beyond a reasonable doubt Defendant Felder's guilt on Count II. The stipulated facts and the detail contained in the defendant's statement sufficiently corroborate and bolster the statement to assure its trustworthiness beyond a reasonable doubt. The evidence proves that Defendant Felder agreed with an individual named "Charlie" and possibly others to commit a violation of 18 U.S.C. § 641, that Felder knowingly and willfully became a member of the conspiracy alleged, and that defendant committed the overt acts charged in furtherance of the object and purpose of the conspiracy.

An appropriate Order follows.[1]

1. This opinion was issued as a Bench Ruling on January 21, 1983 and an Order was entered that date. Additionally, the Court has chosen to have the Bench Ruling prepared and filed as a written opinion. The result is the foregoing typewritten draft which is in full conformity with the handwritten draft with which the Court ruled from the Bench. The Order entered on January 21, 1983, following the Bench Ruling, reads as follows:

AND NOW, this 21st day of January, 1983, came the attorney for the Government and the defendant being present with counsel, it is ADJUDGED that the defendant is convicted upon his plea of not guilty to Count II of Information Number 82–00242, charging him with a violation of 18 U.S.C. § 371 upon the findings of fact and conclusions of law set forth by this Court at the January 21, 1983 hearing in this matter. Accordingly, it is hereby ORDERED that:

1. A presentence investigation report shall be submitted to this Court addressing both Counts I (one) and II (two) of the Information in this matter.

2. Defendant shall be sentenced as to both Counts I (one) and II (two) of the Information on February 16, 1983, at 9:30 A.M., in Courtroom 12B of the United States Courthouse for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, Pennsylvania 19106.