## MURPHY v. UNITED STATES.
### No. 14309.

United States Court of Appeals
Fifth Circuit.
Aug. 6, 1953.

572

George F. Edwardes, Texarkana, Ark., for appellant.

Harlon E. Martin, Asst. U. S. Atty., and Warren G. Moore, U. S. Atty., Tyler, Tex., for appellee.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted under the National Motor Vehicle Theft Act, commonly called the Dyer Act, 18 U.S.C.A. § 2312, for the transportation in interstate commerce of two motor vehicles, "knowing the same to have been stolen". The theory of the Government's case was that appellant fraudulently induced Johnny Camp to deliver to him possession of, but not title to, the automobiles by giving him a check in payment for each, which checks were returned unpaid for "insufficient funds." The theory of the defense was that the automobiles.

were not "stolen" within the meaning of the Act because Camp voluntarily parted with title to, as well as possession, of the automobiles at the time of their alleged sale.

In submitting the case to the jury the District Judge in effect followed the holding in Ackerson v. United States, 8 Cir., 185 F.2d 485, that Congress employed the word "stolen" in the same sense as used in the common law definition of larceny, that ordinarily there must be a felonious taking by trespass and carrying away of the motor vehicle of another without the owner's consent and against his will and with the intent to deprive the true owner of his property; but that where a person, intending to steal another's automobile, obtains possession, although by and with the consent of the owner, by means of fraud or through fraudulent trick or device, and feloniously converts the property to his own use, the owner is regarded as having retained constructive possession and the conversion constitutes the trespass which is an essential element of larceny. The District Judge further charged the jury, "That rule is not applicable where the owner, although induced by fraud, intends to part voluntarily with the title to the property, as well as his possession thereof, not expecting the property to be returned to him or be disposed of in accordance with his directions." The Government insists upon a less technical definition of the word "stolen" as enunciated by the District Court in U. S. v. Adcock, D.C.Ky., 49 F. Supp. 351; compare Davilman v. U. S., 6, Cir., 180 F.2d 284; Collier v. U. S., 6 Cir., 190 F.2d 473; U. S. v. Sicurella, 2 Cir., 187 F.2d 533. The statute being criminal should be strictly construed and we think the District Judge correctly interpreted the meaning of the word "stolen".

Camp was a member of a partnership engaged in the business of selling new and used cars in Tyler, Texas. He had known the appellant for four or more years, and knew him to be an automobile dealer in Cleveland, Mississippi, under the style of Standard Auto Company. The appellant came to Camp's place of business in Tyler, Texas "looking for some cars to buy."

Camp agreed to sell him a 1951 Ford and a 1951 Oldsmobile, both new cars, and the appellant gave him for the Ford a check drawn on the Bank of Cleveland, Mississippi for $2,000.00, and for the Oldsmobile, a check drawn on the same bank for $2,550.-00. Both checks were returned marked "insufficient funds." There was no other evidence as to what amount, if any, the appellant had on deposit with the Bank of Cleveland at the time the checks were given. Over the appellant's objection, the Government was permitted to prove an admission by the appellant that he sold both automobiles, did not bank the money derived from such sales, but instead went "on a drinking and gambling spree."

Camp testified that he sold the automobiles to appellant expecting him to resell them. An invoice for each car signed in Camp's name and bearing the certificate of a Notary Public that "This car is unregistered and state tax not paid; car is paid for in full", was delivered to the appellant. In addition, appellant was given a formal written "Bill of Sale" for the Oldsmobile, and Camp testified that he might have given him a bill of sale on the Ford, also, he didn't recall. On Camp's "Used Car record" each car was entered as "Sold to Pat Murphy".

The basis of the Government's insistence that Camp did not pass to appellant the title to as well as the possession of the automobiles is the understanding testified to by Camp that when the checks cleared he was to mail to appellant a "Manufacturer's Certificate of Origin" on the Oldsmobile, and a Mississippi receipt for "Road and Bridge Privilege Tax" and an executed bill of sale on the Ford with the name of the purchaser blank. Camp admitted that he knew Mississippi was a "non-title" state. Appellant could and did resell the automobiles in that state without the documents which Camp retained.

In the absence of any evidence as to the amount of appellant's bank balance on December 14, 1951, the date when the checks were drawn, it is doubtful whether any felonious intent had been proved. The hearsay indorsement "insufficient funds" entered two weeks later was not enough.

There was no claim that the cars were delivered on consignment, Camp expected appellant to resell them. It was error, therefore, to admit testimony that appellant did resell the automobiles and failed to bank the money received for them. Such failure could not make appellant's prior conduct amount to larceny.

After the jury had deliberated for a while, it inquired in writing from the Court, "Under the law does a bill of sale constitute legal title to an automobile?" The court answered:

"Gentlemen, I don't know what particular bill of sale you have reference to, but, as I instructed you this morning, whether or not a particular bill of sale passes title under the applicable laws of any particular state is immaterial, it is the question of whether or not there was an intention to pass title to the automobile irrespective of whether under the applicable laws the bill of sale would or would not pass title, it is the question of intention. Does that answer your question?"

The appellant assigned detailed and specific objections to the Court's response. The giving of a bill of sale was clearly material for consideration on the question of whether title passed, and the Court's response to the jury's inquiry was prejudicially erroneous.

Over and beyond all matters of procedure, however, the course of dealing of Camp and the appellant can leave no doubt in the minds of reasonable men that Camp intended to pass both the title to and the possession of the automobiles to appellant so that appellant might resell them in Mississippi. Appellant may be guilty of some state offense covering the securing of property by false pretenses, but he is not guilty of the federal offense of transporting in interstate commerce "stolen" motor vehicles. It seems obvious that Camp's insistence that he retained title to the automobiles is a mere afterthought superinduced by the return of the checks for insufficient funds.

Reversed and remanded.