**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Albert Butler CHATHAM, Defendant-Appellant.**

**No. 77–5226.**

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1978.

Tom Allen, Atlanta, Ga., for defendant-appellant.

Wm. L. Harper, U. S. Atty., Jerome J. Froelich, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges. .

THORNBERRY, Circuit Judge:

This is a Dyer Act case.[1] The defendant, Albert Butler Chatham, in the words of his attorney, is a spoiled rich kid with a mania for automobiles. This mania—particularly for the Mercedes Benz 450 SL—resulted in his conviction for knowingly transporting a stolen automobile in interstate commerce.

Chatham, the profligate son of a wealthy manufacturer, is the beneficiary of several trusts established in the Wachovia Bank and Trust Company of Winston-Salem, North Carolina. The trusts are discretionary, meaning that Chatham has no right to the money unless the trustees approve its disbursement. The corpus of the trusts amounts to something less than $300,000, and without invasion of the principal, produces approximately $14,000 annually, after taxes. Unfortunately, Chatham has not been able to live within his means.

In July 1974, Chatham purchased a 450 SL Mercedes Benz from RBM Motors in Atlanta, Georgia. Finding this vehicle to be less than satisfactory, he purchased a second 450 SL from RBM in March 1975 with a check that was not backed by sufficient funds. Subsequently, his trustees decided to honor the check and invaded the principal of the trust for the $17,000 purchase price. Chatham's trust officer, Ms. Holtzclaw, also informed him that the trustees would pay for no more cars.

Several months later, in July 1975, Chatham again experienced overdraft difficulties, and Ms. Holtzclaw told the defendant that something had to be done about the problem. She testified that Chatham agreed to close the checking account and solemnly promised not to draw any more checks on the Wachovia Bank.

Nevertheless, Chatham issued a multitude of worthless checks. Among those was a check to RBM for a third Mercedes Benz 450 SL. This time Chatham's father came to the rescue, paying off the debt for this car along with approximately $50,000 in other debts in October 1975.

A month later, the defendant found himself in Denver, Colorado. He made a long distance call to RBM Motors and arranged to purchase a fourth Mercedes Benz 450 SL. Chatham then flew to Atlanta and took delivery on November 8, 1975. He gave RBM two worthless post-dated checks and additionally agreed to pay the purchase price by January 6, 1976. RBM retained the title to the car.[2]

Chatham drove the Mercedes to Colorado and ten days later, after representing that he owned the car free of encumbrances, entered into a contract with Thoroughbred Car Company of Colorado Springs to exchange his Mercedes Benz 450 SL for a Chevrolet Blazer and $7,055.45 cash. Thoroughbred Motors advanced Chatham $2,000 immediately and was to pay him the remaining $5,000 on receipt of the title for the Mercedes. Of course, he did not own the Mercedes, the title was never delivered to Thoroughbred Motors, and the defendant never returned for the $5,000.

---

1. Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

    18 U.S.C. § 2312

2. One employee of RBM Motors testified that post-dated checks and an additional notation on the sale transaction was a typical manner in which RBM Motors did business since buyers of very expensive automobiles often needed time to gather the purchase price.

Chatham, not lacking gall, and RBM, not lacking gullibility, entered into a contract for a fifth Mercedes Benz 450 SL on February 5, 1976. This time the defendant gave RBM a check for $38,495 to cover the fourth and fifth cars. It was also worthless.

A federal grand jury indicted Chatham for violating the Dyer Act on January 5, 1977. The indictment charged that the defendant transported a 1975 Mercedes Benz 450 SL (number four) from Atlanta, Georgia, to Denver, Colorado, knowing it to be stolen. After a jury trial, Chatham was convicted and he takes this appeal.

### I.

■ The defendant's first argument is that the district court erred in refusing to grant his motion for acquittal. Chatham contends that under *Murphy v. United States*, 206 F.2d 571 (5 Cir. 1953), a conviction under the Dyer Act cannot be sustained if the automobile was obtained in a lawful manner.[3] In *Murphy* we held that "stolen" as used in the Dyer Act required common law larceny as a basis for conviction.[4] *Murphy* is no longer the law. In *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), the Supreme Court disagreed with our narrow reading of the word "stolen":

A typical example of common-law larceny is the taking of an unattended automobile. But an automobile is no less "stolen" because it is rented, transported interstate, and sold without the permission of the owner (embezzlement). The same is true where an automobile is purchased with a worthless check, transported interstate, and sold (false pretenses).

. . .

We conclude that the Act requires an interpretation of "stolen" which does not limit it to situations which at common law would be considered larceny. . . "Stolen" . . . includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny.

In *Dennison v. United States*, 385 F.2d 905 (5 Cir. 1967), the Fifth Circuit recognized the effect of *Turley* on *Murphy*:

[*Turley*] in effect overruled the narrow construction which this court and others had previously given the statute by construing it to require common law larceny as a basis for conviction.

*Id.* at 906.

In view of *Turley*, this court and other courts have consistently held that the test to be applied in Dyer Act cases is whether the defendant deprived the real owner of

3. While we specifically do not wish to enter the thicket of common law crimes, we note that even if *Murphy* were the law, Chatham could not come within its umbrella. If Chatham were charged with a common law crime, the charge would properly be larceny by trick. This is because the defendant never received title to the Mercedes in question. The crime of larceny by trick consists of obtaining "possession of, but not title to, another's property by lies, then intending fraudulently to convert the property and later doing so." Larceny by trick is a variety of larceny and would be covered by even the most restricted definition of "stolen." W. Lafave & A. Scott, Criminal Law, § 85 at 627. *Murphy* recognizes this distinction:

[W]here a person, intending to steal another's automobile, obtains possession, although by and with the consent of the owner, by means of fraud or through fraudulent trick or device, and feloniously converts the property to his own use, the owner is regarded as having retained constructive possession and

the conversion constitutes the trespass which is an essential element of larceny.

206 F.2d at 573.

On the other hand, theft by false pretenses is not a variety of common law larceny, it being a statutory creation. 30 Geo. II, c. 24 (1757). The crime of false pretenses consists, historically, of five elements: "(1) a false representation of a material present or past fact (2) which causes the victim (3) to pass title to (4) his property to the wrongdoer, (5) who (a) knows his representation to be false and (b) intends thereby to defraud the victim." W. Lafave & A. Scott, *supra*, § 90 at 655.

4. [T]here must be a felonious taking by trespass and carrying away of the motor vehicle of another without his consent and against his will and with the intent to deprive the true owner of his property.

*Murphy v. United States*, 206 F.2d 571, 573 (5 Cir. 1953).

the beneficial effects of ownership.[5] The common law difference between theft by false pretenses and larceny by trick has presented no problem in sustaining convictions under the Dyer Act. Courts have consistently upheld convictions under the Dyer Act in which the defendant gave the owner a worthless check and the jury found that it was the intention of the issuer to deprive the owner of his beneficial rights of ownership. *Bridges v. United States,* 427 F.2d 544 (9 Cir. 1970); *United States v. Gunter,* 393 F.2d 511 (7 Cir. 1968) (This case erroneously labels the offense theft by false pretenses, since title was not given to the defendant, the crime, properly was larceny by trick.); *Love v. United States,* 386 F.2d 260 (8 Cir. 1967), *cert. denied,* 390 U.S. 985, 88 S.Ct. 1111, 19 L.Ed.2d 1286 (1968); *Dennison v. United States,* 385 F.2d 905 (5 Cir. 1967); *Landwehr v. United States,* 304 F.2d 217 (8 Cir. 1962). The defendant's reliance on *Murphy* is clearly without merit.

## II.

■ In his next point of error, Chatham contends that the trial judge excluded testimony relevant to his defense and improperly commented on his defense. Under the Dyer Act, a defendant must have had the intent to permanently or temporarily deprive the rightful owner of the rights and benefits of ownership. The defendant contends that at the time he obtained the Mercedes in question, he had no intention to steal it and he developed no intention to steal the Mercedes thereafter. To this end, Chatham undertook what he termed the "open account defense," seeking to demonstrate that through a consistent course of dealing he and RBM Motors brought pressure to bear on the trustees to "cover" the checks and that he had no intention of depriving the true owners of the beneficial effects of ownership.

The trial judge felt that this so called "open account" defense was irrelevant and consistently overruled attempts by the defense to introduce evidence of the defendant's dealings with RBM concerning other automobiles. For example, during the course of the trial the following colloquy took place:

Q. In October of 1975, did Mr. Chatham have a problem with the purchasing of the third Mercedes?

.   .   .   .   .

MR. BOGART [government's attorney]: Your Honor, I fail to see the relevance—

THE COURT: I do, too. What's the relevance, Mr. Allen?

MR. ALLEN [defense attorney]: I'll briefly explain the relevance, for it is to us a crucial part of the defense.

---

5. *United States v. Zepin,* 533 F.2d 279 (5 Cir. 1976); *United States v. Neville,* 516 F.2d 1302 (8 Cir. 1975), *cert. denied,* 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1976); *United States v. Miles,* 472 F.2d 1145 (8 Cir. 1973), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973); *United States v. Maze,* 468 F.2d 529 (6 Cir. 1972), *aff'd* 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *United States v. Hull,* 437 F.2d 1 (5 Cir. 1971); *United States v. Wilson,* 436 F.2d 122 (3 Cir. 1971), *cert. denied* 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971); *United States v. Matthews,* 427 F.2d 889 (10 Cir. 1970); *United States v. McLean,* 424 F.2d 513 (8 Cir. 1970), *cert. denied* 400 U.S. 853, 91 S.Ct. 89, 27 L.Ed.2d 91 (1971); *United States v. Bruton,* 414 F.2d 905 (8 Cir. 1969); *United States v. Ryan,* 415 F.2d 847 (5 Cir. 1969); *United States v. Meek,* 388 F.2d 936 (7 Cir. 1968), *cert. denied* 391 U.S. 951, 88 S.Ct. 1855, 20 L.Ed.2d 866 (1968); *Mayzak v. United States,* 402 F.2d 152 (5 Cir. 1968); *McCarthy v. United States,* 403 F.2d 935 (10 Cir. 1968); *Dennison v. United States,* 385 F.2d 905 (5 Cir. 1967); *Love v. United States,* 386 F.2d 260 (8 Cir. 1967), *cert. denied* 390 U.S. 985, 88 S.Ct. 1111, 19 L.Ed.2d 1286 (1968); *Stone v. United States,* 385 F.2d 713 (10 Cir. 1967), *cert. denied* 391 U.S. 966, 88 S.Ct. 2038, 20 L.Ed.2d 880 (1968); *Smith v. United States,* 385 F.2d 252 (8 Cir. 1967); *Mills v. United States,* 367 F.2d 366 (10 Cir. 1966); *Riley v. United States,* 359 F.2d 850 (5 Cir. 1966); *Webb v. United States,* 369 F.2d 530 (5 Cir. 1966); *United States v. Dillinger,* 341 F.2d 696 (4 Cir. 1965); *United States v. Oates,* 314 F.2d 593 (4 Cir. 1963); *United States v. Welborn,* 322 F.2d 910 (4 Cir. 1963); *United States v. Durham,* 319 F.2d 590 (4 Cir. 1963); *Sadler v. United States,* 303 F.2d 664 (10 Cir. 1962); *Berard v. United States,* 309 F.2d 260 (9 Cir. 1962); *United States v. Koeller,* 310 F.2d 409 (7 Cir. 1962); *Landwehr v. United States,* 304 F.2d 217 (8 Cir. 1962); *Brown v. United States,* 277 F.2d 201 (8 Cir. 1960); *Tandberg-Hanssen v. United States,* 284 F.2d 331 (10 Cir. 1960).

**450**

THE COURT: Well, if it is, you ain't got a defense.[6]

■ Because we agree with the defendant that his past course of dealing with RBM Motors is relevant to his intention, we must reverse and remand the defendant's conviction on the grounds that the trial judge improperly excluded testimony[7] concerning the past transactions and the judge improperly commented on the defense. The defendant is entitled to make his defense on the open account theory without having the trial judge appear to disparage it. In *United States v. Grimes*, 413 F.2d 1376, 1378 (7 Cir. 1969), the court said, "[T]he defendant in a criminal case is entitled to have the jury consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous." In *Wardlaw v. United States*, 203 F.2d 884, 886 (5 Cir. 1953), we said, "The comments and remarks of the court in the presence of the jury would have had no effect other than to impress the jury with the belief that there was no good faith defense." *See also United States v. Spingola*, 464 F.2d 909 (7 Cir. 1972); *United States v. Gomez-Rojas*, 507 F.2d 1213, 1224 (5 Cir. 1975).

We wish to emphasize that on retrial the jury is completely free to reject the open account defense and is free to find, as is the government's theory, that Chatham, at the time he purchased the Mercedes from RBM

Motors, intended to deprive RBM of the beneficial effects of ownership. In *Landwehr v. United States*, 304 F.2d 217, 221 (8 Cir. 1962), the court stated, "Whether or not the appellant was guilty of false pretenses in the issuance and passing of the insufficient funds check was a question of fact for the jury." If the jury rejects Chatham's attempt to show that he had no intent to deprive RBM Motors of the beneficial effects of ownership, under the facts before us, we would have no hesitancy in upholding his conviction.

### III.

■ Chatham also complains of prosecutorial misconduct, contending that the prosecutor improperly commented about his trusts and financial problems.[8] For example, he points to the comment made by the prosecutor during his opening statement:

The Defendant has been writing checks far in excess of the amount he had to spend and the Trust could not cover the checks . . . Albert, don't write anymore checks. You have no money. You can't buy things.

We cannot understand how this statement and related comments can be misconduct, since Chatham's defense was that he had no intention to deprive RBM of the beneficial effects of ownership.[9] He cannot urge that

---

**6.** Moreover, at a side bar conference the trial judge said: "Pie, if a defense hopes a pie would fall from the sky and take care of him, we'd never have a Defendant guilty in this court." We do not wish to imply that the jury heard this comment. We use this merely as an example of the judge's view of the "open account defense."

**7.** Along with testimony, the trial judge excluded certain documentary evidence concerning the purchase of Mercedes number five and evidence of a civil suit between RBM and Thoroughbred Motors as plaintiffs and Albert Chatham as defendant. While the document appears to us to be unnecessary to the open account defense, the trial judge on retrial may at his discretion admit this document. The tendered offer of evidence of the civil suit is clearly inappropriate and the trial judge was correct in excluding the offer.

**8.** Of course, our disposition of this case makes discussion of this point unnecessary, however, since this issue will invariably arise on retrial, we think it important to consider this argument.

**9.** Chatham testified:

I very firmly believed at the time that my trust would pay for the car. I had no reason to believe otherwise. We had argued over my finances in the past, but in one way or the other, they had always paid.
So, I had no reason to doubt that they would not do so on this occasion.
I firmly believed that as it was getting towards the end of the year and taxes were coming up, that they would pay the six thousand dollar one before the end of the year and the twelve thousand dollar one at the first, and that way my capital gain situation would not have been as severe.

the government is forbidden from demonstrating that the trusts could not have covered his overdrafts and Chatham knew that the trusts would not cover his debts. In short, Chatham cannot have his cake and eat it too; once he raises a "no intent" defense, the government can obviously offer rebuttal evidence.

■ Finally, Chatham contends that at one time during the trial the government's attorney said Chatham had stolen *cars* (emphasis added), although the indictment charged only one Dyer Act violation. We are persuaded that the prosecutor's one-time reference to "cars"—instead of "car" —was inadvertent, especially since Chatham himself presented evidence as to the other autos he had purchased. The standard to be applied in cases of prosecutorial misconduct is that the misconduct has to "permeate the entire trial." *United States v. Blevins*, 555 F.2d 1236 (5 Cir. 1977). The conduct complained of hardly rises to this level.

### IV.

■ Although the defendant does not complain about the charge to the jury,[10] we have determined that in the interest of justice several comments are appropriate. The trial judge gave the following charge concerning the word stolen, which was taken directly from Devitt and Blackmar, Federal Jury Practice and Instructions, (3rd ed. 1977), § 45.04:

> The word "stolen" as used in the crime of interstate transportation of stolen motor vehicles includes all wrongful and dishonest takings of motor vehicles with the intent to deprive the owner of the rights and benefits of ownership. It is not necessary that the taking of the vehicle be unlawful. Even if possession of the vehicle is lawfully acquired, the vehicle will be deemed "stolen" if the defendant thereafter forms the intent to deprive the owner of the rights and benefits of ownership, and converts the vehicle to his own use.

Ordinarily, this charge is perfectly correct. Its purpose, which we have explicitly recognized in *United States v. Smith*, 502 F.2d 1250, 1256, n.9 (5 Cir. 1974), is to apply in the situation in which a lessee or bailee lawfully obtains a vehicle and thereafter forms an intent to unlawfully convert the vehicle to his own use. We have held, however, that there can be no Dyer Act violation if the defendant formed his intention to steal the vehicle after interstate transportation has been completed.[11] *United States v. Richards*, 425 F.2d 432 (5 Cir. 1970), *cert. denied* 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82 (1970). *See also United States v. Diodati*, 355 F.2d 806 (4 Cir. 1966).

10. Chatham does complain, however, that the trial judge improperly limited his supplemental instructions to the government's theory of the case. As we stated in *United States v. Blevins*, 555 F.2d 1236, 1239 (5 Cir. 1977), there is no error if the trial judge in supplemental instructions charges exactly as he was requested. *Posey v. United States*, 416 F.2d 545 (5 Cir. 1969), *cert. denied* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); *Windisch v. United States*, 295 F.2d 531 (5 Cir. 1961); *Cain v. United States*, 274 F.2d 598 (5 Cir.), *cert. denied* 362 U.S. 952, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960); *Lambert v. United States*, 261 F.2d 799 (5 Cir. 1958).

11. Since the statute makes it a crime to transport in interstate commerce a stolen vehicle in interstate commerce, it logically follows that there can be no violation if the vehicle did not become stolen until after the *conclusion* of the interstate commerce. The car rental cases are not contradictory since in each case, the jury either found that the defendant intended to steal the car before the interstate commerce had been completed or formed the intent to steal during the interstate commerce. *See United States v. Wilson*, 488 F.2d 688 (5 Cir. 1973); *United States v. Wyatt*, 437 F.2d 1168 (7 Cir. 1971); *United States v. Baker*, 429 F.2d 1344 (7 Cir. 1970); *United States v. Richards*, 425 F.2d 432 (5 Cir. 1970), *cert. denied* 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82 (1971); *United States v. McLean*, 424 F.2d 513 (8 Cir. 1970), *cert. denied* 400 U.S. 853, 91 S.Ct. 89, 27 L.Ed.2d 91; *United States v. Bruton*, 414 F.2d 905 (8 Cir. 1969); *United States v. Bridges*, 406 F.2d 1051 (10 Cir. 1969); *United States v. Meek*, 388 F.2d 936 (7 Cir. 1968), *cert. denied* 391 U.S. 951, 88 S.Ct. 1855, 20 L.Ed.2d 866; *Smith v. United States*, 385 F.2d 252 (8 Cir. 1967); *Blum v. United States*, 348 F.2d 141 (5 Cir. 1965).

Under this charge, it becomes apparent that the jury could have convicted Chatham if it determined that he intended to steal the car in Colorado.[12] Under *Richards*, this is an impermissible result. Therefore, on retrial, we think that an instruction must be given that makes clear that if Chatham did not form an intent to steal the automobile until the interstate transportation was complete, the jury must acquit him.[13]

We do not wish to imply that evidence of Chatham's dealings with Thoroughbred Motors in Colorado is inadmissible. A long line of cases has held that the defendant's intention to steal at the time of acquisition can be shown by subsequent conduct. *United States v. McLean*, 424 F.2d 513 (8 Cir. 1970), *cert. denied*, 400 U.S. 853, 91 S.Ct. 89, 27 L.Ed.2d 91 (1971). As we said in *Richards, supra*, at 435:

> After excusing the jury for exceptions to the general charge, counsel for Richards requested an additional instruction which he contended was necessary to overcome the consequences of the statement made in closing argument to the effect that the interstate transportation of the vehicle continued until it had been returned to Miami, Florida. The instruction specifically requested was: "[T]he interstate transportation referred to in the indictment is a trip which ended on arriving in the Del Rio Division (of Texas) and that

any offense that they consider might have been committed after that date would be immaterial to the question of guilt or innocence of the offense charged herein." The trial court correctly refused to give this instruction *in haec verba* or in substance, because it excluded acts which were properly relevant to a determination of Richards' intent during the period of interstate commerce involved. What Richards did subsequent to his arrival in Texas was clearly relevant and therefore competent to show a prior intent to steal the car while it was in interstate commerce. *United States v. Bruton* [414 F.2d 905 (8 Cir. 1969)]; *United States v. Dillinger* [341 F.2d 696 (4 Cir. 1965)]; *United States v. Jones*, 340 F.2d 599 (4th Cir. 1965).

Accordingly, the defendant's conviction is REVERSED AND REMANDED.

---

12. The trial judge at one point appeared not to understand this distinction as he stated, "That's not the necessary intent, either. The intent is that sometime in this transaction he formed an intent to deprive the true owner of this vehicle, of his rights in connection with it, either when he originally got the car, or in dealing with it *thereafter when he traded it.*" [emphasis added]

13. Devitt & Blackmar, § 45.01 charges correctly that the motor vehicle must be stolen at the time of the interstate transportation:

> It is charged in the indictment that on or about _____, in the District of _____, the defendant, _____, did willfully transport, and cause to be transported, a certain stolen motor vehicle, namely: a Chevrolet 2-door sedan _____, in interstate commerce, from _____, to _____; and that the *defendant then and there knew the motor vehicle had been stolen*; in violation of Title 18, section

2312, of the United States Code. [emphasis added]

The trial judge charged:

> This indictment charges, for example, and I quote, that on or about the 15th day of November, 1975, within the Northern District of Georgia—that's this district—the Defendant, Albert Butler Chatham, transported in interstate commerce a stolen motor vehicle, that is, a 1975 Mercedes Benz 450 SL, from Atlanta in the State of Georgia, to Denver, in the State of Colorado, well knowing said motor vehicle to have been stolen, in violation of Title 18, United States Code, Section 2312.

While this charge arguably informs the jury that Chatham committed no offense under 18 U.S.C. § 2312 if he did not know the vehicle was stolen until after the interstate transportation had been completed, we think the better charge would have made this fact more apparent.