STATE of South Dakota, Plaintiff
and Appellee,

v.

George LUNA, Defendant and
Appellant.

No. 14621.

Supreme Court of South Dakota.

Argued May 22, 1985.

Decided Nov. 20, 1985.

John P. Guhin, Asst. Atty. Gen., Pierre (Mark V. Meierhenry, Atty. Gen., Pierre, on brief), for plaintiff and appellee.

Leslie J. England, Office of Public Defender, Rapid City, for defendant and appellant.

MORGAN, Justice.

This appeal is from a jury's conviction of George Luna (Luna) on two counts of first-degree murder in violation of SDCL 22–16–4. Luna was indicted by a grand jury, a felony arrest warrant was issued, he was arraigned, tried by a jury, and convicted. Luna appeals his convictions. We affirm.

A double murder occurred in the early morning hours of May 1, 1983, in Rapid City, Pennington County, South Dakota. The victims were Helen Thomas (Helen) and Lynn Luna (Lynn), Helen's daughter and Luna's estranged wife. Luna and Lynn were engaged in a rather heated divorce proceeding and Luna had expressed considerable animosity toward Helen, his mother-in-law.

A Pennington County Grand Jury heard evidence on the matter four months later and handed down an indictment on September 21, 1983. Counsel was appointed for Luna, notices were filed, and at least one motion for change of judge was granted. Before the jury trial on May 14, 1984, numerous pretrial motions were filed, appointed counsel withdrew, and privately retained counsel took up representation.[1] The various motions and rulings that are in issue and the facts of the case will be discussed where they are pertinent to the issues.

Luna raises six issues on this appeal: (1) Whether Luna's constitutional rights to compulsory process and due process were violated by the trial court's exclusion of third-party perpetrator evidence; (2) whether Luna's constitutional right to due process was violated by the State's failure to produce potentially exculpatory microscopic particle evidence; (3) whether Luna's consent to search and seizure was involuntary and thus required exclusion of physical evidence, whether use of this physical evidence at trial was plain error, and whether Luna was denied his constitutional right to

effective assistance of counsel when his attorney abandoned motions to suppress the physical evidence; (4) whether the trial court's denial of motions for change of venue predicated on prejudice generated by pretrial publicity violated Luna's constitutional right to an impartial jury and to due process; (5) whether Luna's constitutional right to equal protection was denied by the trial court's failure to provide a preliminary hearing; and (6) whether Luna's constitutional right to confrontation was violated by the trial court's admission of hearsay evidence.

Luna first urges that the trial court violated his Sixth and Fourteenth Amendment rights by excluding certain third-party perpetrator evidence that he sought to introduce.

The evidence that Luna sought to introduce, as outlined in his brief, is: (1) Joe Leonard (Leonard) entered a convenience store, the Common Cents Store, situated on Rushmore Road, about one-half block from the scene of the crime, about 2:30 a.m. on the morning of May 1. Leonard had blood on his hands and his shirt cuff. On June 18, 1983, approximately seven weeks later, Leonard also confessed to a drinking companion that he had committed the murder and that he was a killer for hire. The drinking companion also made some allegations about Leonard leaving a steel pipe under his davenport and that another steel pipe had been moved from where he usually stored it. (2) Doug Thomas (Thomas), son of Helen and brother of Lynn, had threatened Helen in the fall of 1981 (a year and a half before the crime) and had fired a gun into the ceiling. Although Thomas had not seen the victims for a year prior to the crime, he arrived at the scene shortly after the bodies were found. Thomas was also the beneficiary of a life insurance policy on Helen's life and a trust account, as well as the devisee/legatee under Helen's will. (3) There is also some allegation that one of two boxes containing four or five thousand dollars was missing from Helen's apartment, although the authorities had re-

---

1. Counsel at trial does not represent Luna on appeal.

ported nothing missing. The existence of such boxes was related in an unsworn statement by a friend of Helen's who was, at that time, apparently on the West Coast eluding investigation on charges regarding illegal taking or possession of eagle feathers.

Luna's theory of a third-party perpetrator is apparently in the alternative, to-wit: The crime was committed by either Leonard or Thomas individually or by Leonard and Thomas in conspiracy. The trial court reviewed the proffered scenarios. It observed that, to be admissible, the evidence must show some chain of circumstances, of facts or train of facts to point out the possible guilt of a third party other than the defendant. It stated that collateral evidence should be kept out of the proceedings even though marginally relevant.

▮ The bulk of the proffered evidence was in written form—affidavits, statements and depositions. We find very little if any direct oral testimony. Therefore, our review of the evidence is not limited by the clearly erroneous rule and we can review the evidence in the same light that the trial court did as though presented here in the first instance. *Ayres v. Junek*, 247 N.W.2d 488 (S.D.1976).

Luna alleges that the trial court erred in relying on dicta from *State v. Beets*, 57 S.D. 486, 233 N.W. 917 (1930), as the rule in South Dakota and urges a number of more recent federal cases and the writings of Professor Wigmore in support of a far more liberal rule. The State argues that the *Beets* decision contains the proper rule for South Dakota and attempts to align it with the federal authorities. The *Beets* rule appears to be that for a third-party perpetrator theory "[t]o be available as a defense the proof that another is guilty must show that as a consequence thereof defendant is not guilty." 57 S.D. at 490, 233 N.W. at 918. Furthermore, the evidence must meet admissibility requirements of genuineness.

We note that since *Beets* we have adopted the Rules of Evidence. SDCL 19–12–3 is an exact codification of Federal Rule of Evidence 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." SDCL 23A–22–2 makes civil rules of evidence applicable also to criminal cases, except as otherwise provided in Title 23A. The State suggests that since SDCL 19–12–3 was not relied on by Luna it is not before the court. We disagree. When the rules of evidence were adopted in 1978, they became the criteria for admissibility of evidence. SDCL 19–9–1. It is noteworthy that neither *Beets*, nor any of the cases wherein this court has discussed SDCL 19–12–3 since its adoption, were approached from the perspective of constitutional rights. The latter cases were all decided on the basis of the statutory application of the rule and none of the latter involved exclusion of third-party perpetrator evidence.

In assessing the third-party perpetrator evidence, as offered by Luna, the trial court pointed out that:

(1) Joe Leonard and Doug Thomas were excluded as possible matches for hair samples found on the victims.

(2) Even though Leonard showed up at a store at 2:30 a.m. with blood on his hand there was no evidence to show that the perpetrator injured himself in any fashion and it was obvious from the sink and towel at the scene that the perpetrator cleaned his hands before leaving.

(3) Leonard walked with blood on his hands into a store and accosted a security guard a few blocks from where Luna contends he had just committed a heinous crime. The trial judge found this inconsistent with any theory of Leonard's guilt.

(4) Although Leonard was alleged to have taken two metal bars, possibly the murder weapons, the judge determined that it would be inconvenient

to walk with a bar in each hand. He also determined that the manner in which the bars were returned was inconsistent with Luna's theory.

(5) There was no linkage between Leonard and the victims.

(6) Inconsistencies in Leonard's story were explained by the fact that he was drunk.

(7) Threats made by Thomas were too remote.

(8) On the night of the murders Thomas was with a woman until 4:00 a.m.; she corroborated the alibi and there was no reason to believe she would perjure herself on his behalf.

(9) There was evidence to support testimony that Thomas was emotionally distressed at the deaths.

(10) The fact that Thomas asked about his mother and sister's condition could have been based on his knowledge of Luna's threats on their lives.

(11) No physical evidence ties Thomas to the crime.

With respect to Leonard, the evidence appears to show that he was a "street person" who lived in a camp on the mountain on Skyline Drive near Dinosaur Park. While he was apparently employed from time to time distributing fruit, he also relied on sales of his "drawings" for his income. He also was a regular habitue of the local bars and liquor stores. As he put it, his normal evening practice was to go to a bar, get rousted, go to the next bar, cause a little trouble and get rousted, continuing until he got back to the mountain. "[I]f not, I'd go to detox ... or jail.... That was the schedule." With respect to the bloody hand, his recollection was that he had gone to the Oasis Bar, gotten rowdy and was ejected. That made him angry and he slammed his fist into a concrete block wall. As for the proximity of the Common Cents Store to the scene of the crime, it is noteworthy that the store is located on Rushmore Road, a portion of U.S. Highway No. 16 leading southward from downtown Rapid City to the tourist attractions to the south of the city. It is a highly commercialized area of the city. We particularly note that the State first attempted to connect Leonard with Luna, there being some indication that both had been in the Oasis Bar on the evening immediately preceding the murders. When Leonard denied any acquaintance with or knowledge of Luna, the police apparently gave up on that theory. Artful defense counsel then picked up the ball and tried to run with it.

We find the case of *Perry v. Rushen,* 713 F.2d 1447 (9th Cir.1983), persuasive. The *Perry* Court noted that the Sixth Amendment guarantees the accused " 'compulsory process for obtaining witnesses in his favor.' " *Id.* at 1450. The Sixth Amendment is imposed on the states by the Fourteenth Amendment and compulsory process implicitly prevents the state from arbitrarily excluding such testimony. *Perry, supra, citing Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The *Perry* Court further noted that the defendant's general Fourteenth Amendment right to due process also restrains the operation of state rules of evidence. The Ninth Circuit panel, citing *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), noted that due process is in essence the right of a fair opportunity to defend against the accusations. State evidentiary rules may not be applied mechanistically to defeat the ends of justice. The opinion goes on to emphasize that the defendant's general right to present evidence is undeniably strong; yet the State's legitimate interest in reliable and efficient trials is often compelling. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[2] The *Perry* Court summarized the rules as follows:

*Perry* Court noted that in each case the evidence excluded was highly exculpatory and would exonerate the defendants. It pointed out that the evidence was also crucial and that no other

2. In summarizing the issues in *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the

Where the state interest is strong, only the exclusion of critical, reliable and highly probative evidence will violate due process. When the state interest is weaker, less significant evidence is protected.

... [T]he court must balance the importance of the evidence against the state interest in exclusion.

713 F.2d at 1452.

We then balance the equation in the manner suggested in *Perry*. We start by giving due weight to the substantial state interest in preserving orderly trials, and judicial sufficiency, and in excluding unreliable or prejudicial evidence.

Regarding Luna's theory, we find the evidence with respect to Leonard highly unreliable and of little probative value. His life style has been previously described and there is no indication that it changed after the date of the crime. There is no evidence of any sudden influx of wealth from the proceeds of the crime. There is no evidence of any connection between Leonard and Thomas, only baseless innuendo. As to the circumstances of Thomas, we agree with the trial court's determination that he had an alibi. Taking the evidence as we evaluate it, not as trial counsel represented it in his affidavit, we agree with the decision of the trial court:

There is considerable lack of motivation, opportunity or facts to support either of these individuals as possibly committing the crime; therefore, the court feels that it is appropriate to exclude this evidence to avoid confusion and unduly tying up the court process and to insure that the jury is able to focus on the facts of the case itself without what appears to this court to be irrelevant evidence concerning other relationships or facts that exist, which are not pertinent to the incident in question.

The trial court did not commit error by excluding the third-party perpetrator evidence offered by Luna.

Luna's second issue involves the alleged disappearance of certain glass particles which he claims to have been exculpatory. Under *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Luna claims a violation of his due process rights because the State did not disclose potentially exculpatory evidence (the glass particles). *See also California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). The particles or shards of glass were obtained by the FBI Lab on a check of items of Luna's clothing, including his shirt, t-shirt, jeans, and a pair of gloves. The shards from each item of clothing were purportedly placed in individual vials and labeled with the respective clothing items. The FBI agent who had examined the evidence testified at trial and identified some twenty-four shards which he found to be comparable with broken glass from a window in Helen's apartment. The FBI test results and the vials were turned over to defense for examination pursuant to a court order on a pretrial motion.[3] No pretrial suppression motion or motion in limine was made with respect to the shards. In the course of the trial, when the State sought to offer the exhibits, Luna's counsel objected only on the basis of foundation. In the course of cross-examination of the FBI expert and testimony of the defense expert, an argument developed over whether the shards had been properly preserved. The defense expert testified that he found only twelve shards in the vial and that some of those were not even glass.

The State argues that the issue was not preserved for appeal. On the record, as noted above, that would clearly have been true. Additionally, we have examined the

avenues of introducing such issues were available.

**3.** The motion was a general motion for production of exculpatory evidence per *Brady v. Mary-*

*land,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Neither the motion nor the court order made any specific mention of the clothing or the shards.

motion for new trial filed by Luna. Among some eleven grounds urged, he included:

    4.  Misconduct of the prosecutor. The very particles of glass on which the jury based their verdict were lost by the prosecutor and were not available for testing by the defense. Denying that other particles of glass furnished to the defense were the same particles tested by the prosecution.

In support of the misconduct claim, Luna cites *United States v. Kennedy*, 714 F.2d 968 (9th Cir.1983). Upon examination, we find that the *Kennedy* decision discussed some missing items of evidence under the aegis of prosecutorial misconduct. Nowhere does the decision even allude to a constitutional issue under the *Brady* decision or its progeny.

In his reply brief, defense counsel apparently concedes that the issue was not properly raised but argues that such an argument is an attempt to railroad his valid assertion of error. Counsel cites us to a Wisconsin case supporting the proposition that constitutional issues may be raised for the first time on appeal when it is in the interest of justice. He apparently overlooks our case authority to the contrary embodied in *State v. Hermandson*, 84 S.D. 208, 169 N.W.2d 255 (1969). The *Hermandson* Court was asked to consider the constitutionality of the stop of a truck on suspicion of a game violation. At trial, counsel for Hermandson did nothing more than object on the grounds of lack of foundation to the testimony of one of the wardens as to what he saw in the truck. *Hermandson* presented a strikingly similar record to that which we have before us. The court said: "Defendant may not for the first time raise [the constitutional issue] in the appellate court." 84 S.D. at 212, 169 N.W.2d at 257.

Nor do we deem it appropriate to consider the issue on the plain error rule. *See* SDCL 23A–44–15. The record discloses a considerable debate between the FBI agent and the defense expert on the proper means of preserving the evidence in question. It appears as equally possible that the defense expert may have lost the shards by his method of handling as that the FBI Lab did not properly preserve them. There is certainly no evidence that anyone else had any responsibility for any loss.

In the third issue, Luna attacks the admission into evidence of certain physical evidence seized in his home and in his van on the purported authority of his written consent. The catalog of Fourth Amendment violations which he claims includes force or coercive surroundings, promises, threats, verbal abuse and other illegal police actions. He further contends that his mental and emotional state of mind negated the voluntariness of the signed consent and furthermore that he was not properly advised or "Mirandized" prior to his signing the consent.

Luna acknowledges that suppression of the evidence was sought in a pretrial motion that was withdrawn by his counsel prior to the hearing thereon. Luna now claims that this action deprived him of his constitutional right to effective assistance of counsel and in any event the admission of the evidence was plain error.

■   With respect to the first argument, we again point out that competency of counsel will not be reviewed on direct appeal in ordinary circumstances. *Anderson v. State*, 373 N.W.2d 438 (S.D.1985); *State v. Tchida*, 347 N.W.2d 338 (S.D.1984); *State v. Phipps*, 318 N.W.2d 128 (S.D. 1983). At trial, defense counsel focused on Luna's cooperation with law enforcement authorities in an attempt to show his innocence and willingness to aid in the search for the truth. The tactic failed and appellate counsel now repudiates the previous strategy.

■   Attorneys are presumed competent and a defendant who alleges ineffective assistance carries a heavy burden. *High Elk v. State*, 344 N.W.2d 497 (S.D. 1984). This court will not second guess a trial attorney's tactics. *Anderson, supra; High Elk, supra; Grooms v. State*, 320 N.W.2d 149 (S.D.1982).

With respect to the latter argument, plain error must be applied cautiously and only in exceptional circumstances. *State v. Holter*, 340 N.W.2d 691 (S.D.1983). There was no such error here. The trial court merely acquiesced in defense counsel's trial tactic.

The fourth issue raised on this appeal is whether the trial court committed reversible error by refusing to change the venue. Luna contends that pretrial publicity fatally impaired his constitutional right to a fair trial. U.S. Const. Amend. VI. Luna made four motions for a change of venue.

The law presumes that a defendant can receive a fair trial in the county in which the offense is committed. *State v. Brandenburg*, 344 N.W.2d 702 (S.D.1984). The test is whether there is, in fact, prejudice in the minds of the county residents sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial. *Id.; see* SDCL 23A–17–5. The burden is on the defendant to show a constitutional impairment and the decision on the motion is within the trial court's discretion. *Brandenburg, supra.*

Pretrial publicity alone is not enough to deny a fair trial or, in other words, to warrant a change in venue. *State v. Reed*, 313 N.W.2d 788 (S.D.1981) *citing Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1979). Qualified jurors may have some knowledge of the facts and issues involved without burdening a defendant's Sixth Amendment right. *Id.*

State refers to the court's juror questionnaire in which potential jurors were asked: "Do you know of any reason why you could not serve as a fair and impartial juror in the particular case: the State of South Dakota v. George G. Luna? If yes, explain in detail: _____." Seventy-six jurors were polled. Seventy-two percent answered "no"; eighty-nine percent claimed no opinion on Luna's guilt or innocence; and fifteen percent stated that they could not be fair or impartial for reasons other than an opinion of guilt.

Defendant used all of his peremptory challenges and does not claim that the trial court failed to remove any jurors that Luna wanted removed for cause. The trial court stated that only twelve of ninety-two potential jurors had a predetermined opinion and there is no indication that any of the twelve served on the jury.

In support of his claim of prejudice, Luna presented to the trial court, by motion for new trial, the affidavit of one of the jurors who sat on the case, which claimed that "those in favor of conviction referred to media accounts and indicated that their minds were made up prior to trial." SDCL 19–14–7 provides, in pertinent part:

Except as otherwise provided by statute, upon an inquiry into the validity of a verdict or indictment a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations ... except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention[.]

Luna relies on this statute to claim that media coverage, absorbed before the jurors were impaneled, constitutes "extraneous prejudicial information." This court has held that jurors' pretrial bias cannot form the basis for attacking a verdict under SDCL 19–17–7. *State v. Finney*, 337 N.W.2d 167 (S.D.1983).

The trial court denied this portion of the motion for new trial based on its observation of the jurors during voir dire and trial; finding that the jurors were not predisposed to convict Luna. It pointed out that the jury deliberated eight hours before taking their initial vote.

We next examine Luna's fifth issue, whether he was denied equal protection by failure of State to provide a preliminary hearing. As previously noted, Luna was indicted by a Pennington County Grand Jury. He moved the trial court to grant a preliminary hearing, which motion was denied. He now asserts this is error of constitutional magnitude based on a develop-

ing trend of cases holding that a defendant's constitutional right to equal protection is violated when no preliminary hearing is provided after indictment.

■ The seminal case on this unique theory is *Hawkins v. Superior Court of San Francisco,* 586 P.2d 916 (Cal.1978). The *Hawkins* Court did indeed find that the denial of a post-indictment preliminary hearing deprives a defendant of fundamental rights to counsel, confrontation, personal appearance, hearing before a judicial officer and the right to be free from an unwarranted prosecution. Luna also cites us to three Oregon cases supposedly part of this wave of the future: *State v. Clark,* 291 Or. 231, 630 P.2d 810 (1981); *State v. Edmondson,* 630 P.2d 822 (Ore 1981); and *State v. Freeland,* 667 P.2d 509 (Ore 1983). In reading these cases, however, we find that the Oregon Supreme Court rejects *Hawkins'* "circular use of the concept of class," i.e., classification in terms of those who are indicted and those charged by information where the only distinctions to be tested are the use or non-use of a preliminary hearing. "These defendants do not exist in categories or as classes with distinguishing characteristics *before and apart from the prosecutor's decision* how to charge one or some or all defendants." *Clark,* 630 P.2d at 810 (emphasis added). The dissent in *Freeland, supra,* states that *Hawkins, supra,* has been discredited in every jurisdiction which has considered it, including citations from Illinois, Colorado, Kentucky, Pennsylvania, and West Virginia. *Freeland,* 667 P.2d at 523.

We agree with the reasoning of the *Clark* opinion and reject the "wholly novel proposition" of a *Hawkins* classification. *See Freeland,* 667 P.2d at 523. In our view, it is not the coexistence of the two methods of charging that is open to question; but, rather, an issue of selective enforcement. In *State v. Secrest,* 331 N.W.2d 580 (S.D.1983), we reviewed the constitutional prohibition against selective enforcement.

The Fourteenth Amendment Equal Protection Clause prohibits selected enforcement 'based upon an unjustifiable standard such as race, religion, or other arbitrary classification.... to avoid prosecution for a criminal offense on equal protection grounds, a defendant must show that the government exercised selective enforcement of the law upon an invidious discriminatory basis.'

331 N.W.2d at 583 (citations omitted). We based our decision upon both the federal and state constitutions. We therefore decline Luna's invitation to join the wave of the future; but rather, we number ourselves with the jurisdictions who have rejected the California classification pattern.

Like the defendant in *Secrest,* Luna merely points to a possibility of selective enforcement as the basis for his claim of violation of equal protection. Since the conscious exercise of selective enforcement is not in itself a constitutional violation, *Secrest,* 331 N.W.2d at 584, and Luna does not claim nor is there apparent from the facts before us any unjustifiable standard or classification used in this selective enforcement, we conclude that the constitutional provisions and statutes before us do not violate the federal and state constitutional guarantees of equal protection. U.S. Const. Amend. VI; S.D. Const. art. VI, § 18.

We affirm the action of the trial court in denying the preliminary hearing.

Finally, Luna contends that by admitting into evidence a considerable amount of hearsay testimony, in which both victims were the declarants, he was deprived of his constitutional right of confrontation. U.S. Const. Amend VI; S.D. Const. art. VI, § 7. At the time of the crime, Lynn and Luna were engaged in a divorce proceeding which was apparently quite hotly contested, particularly on the issue of custody of their only child.

The State gave notice of intent to use hearsay testimony, Luna challenged its admissibility, and a pretrial hearing was held wherein the trial court heard the testimony of the proposed witnesses. The evidence was in various forms: affidavits in Lynn's divorce proceedings, statements made to

her divorce attorney, a social worker, a court services' worker, a psychologist, friends, co-workers, and reports to police officers. The bulk of the statements regarded Luna's jealousy, bad temper, death threats, and Lynn's fear of him. There was also testimony of Helen's statements regarding Luna threatening her, his abusive nature, and his threats against Lynn. The hearings on admissibility lasted two days. The trial court ordered some of the evidence excluded and the balance admitted. This testimony was admitted under SDCL 19–16–35, the so-called residual exception to the hearsay rule, which reads:

> A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that
>
>> (1) the statement is offered as evidence of a material fact;
>>
>> (2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
>>
>> (3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
>
> However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

In *State v. McCafferty*, 356 N.W.2d 159, 163 (S.D.1984), a case also dealing with the residual exception, we quoted *Ohio v. Roberts:*

> 'Reflecting [the Confrontation Clause's] underlying purpose to augment accuracy in the fact-finding process by insuring the defendant an effective means to test adverse evidence, the clause countenanc-

es only hearsay marked with such trustworthiness that "there is no material department from the reason of the general rule." ... The focus of the court's concern is then to insure that there are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant, ... and to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement[.]'

448 U.S. 56, 65–66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 607–8 (1980).

In *McCafferty* we further stated " 'the indicia of reliability' referred to by the *Roberts* Court and the 'circumstantial guarantees of trustworthiness' language in the residual exception to the hearsay rule are synonymous." 356 N.W.2d at 163. The trial court below heeded our direction in *McCafferty* that the determination of reliability be made on the record outside the presence of the jury. The trial judge viewed the hearsay evidence with the other evidence in the case and considered (1) the nature ... written or oral, of the evidence; (2) the character of the statements; (3) the declarants' relationship to the witness; (4) the declarants' motivation in making the statements; and (5) the circumstances under which the declarants made the statements. The trial court found the witnesses and declarants trustworthy and credible. It admitted testimony that was found to be consistent with other evidence. The trial court found the written documents admitted (affidavits in the divorce proceedings) were carefully and accurately prepared.

The bulk of the evidence before the trial court on the issue of admissibility was in the form of testimony of various witnesses who were relating the declarations. In this instance, we hold that the clearly erroneous rule applies as our scope of review. *See* SDCL 15–6–52(a). We do not find that the trial court was clearly erroneous in admitting the hearsay testimony.

Accordingly, Luna's convictions are affirmed.

FOSHEIM, C.J., and WUEST, Circuit Judge, acting as a Supreme Court Justice, concur.

HENDERSON, J., dissents.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.

HENDERSON, Justice (dissenting).

For the reasons expressed below, I respectfully dissent.

The criminally accused's right to proffer a defense is fundamental. *See Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312 (1973); *United States v. Garner,* 581 F.2d 481, 488 (5th Cir.1978); *United States v. Ballesteros-Acuna,* 527 F.2d 928, 930 (9th Cir. 1975); and *United States v. Thomas,* 488 F.2d 334, 335 (6th Cir.1973). This constitutional right to present evidence, and thus a defense, is grounded in the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, *Chambers,* and in S.D. Const. art. VI, §§ 2 and 7. Thus, the accused "is entitled to have the jury consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous. *Tatum v. United States,* 88 U.S.App.D.C. 386, 190 F.2d 612, 617 (D.C.Cir.1951); *United States v. Phillips,* 217 F.2d 435, 442–443 (7th Cir.1954)." *United States v. Grimes,* 413 F.2d 1376, 1378 (7th Cir.1969). *See also, United States v. Chatham,* 568 F.2d 445, 450 (5th Cir.1978).

> [I]f the evidence [offered by the accused] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt. A contrary rule is unfair to a really innocent accused.

1A Wigmore, *Evidence* § 139, at 1724 (Tillers rev. 1983). *Perry v. Rushen,* cited in the majority opinion, 713 F.2d at 1453, observes that the California rule for exclusion of third-party perpetrator evidence would violate constitutional principles in some situations. This is such a situation. Appellant has the right to create a reasonable doubt and he should not have been estopped from doing so under these circumstances. Surely, a man with blood on him, just a half block from the crime scene, at or about the exact time of death, who was a felon and demonstrating hostility to the point he picked a fight with a security guard, is not "speculative" nor "fantastic" as 1A Wigmore, *Evidence* § 139, comments upon. It becomes particularly more relevant, later on, when this individual confesses or makes statements that he committed the murders. It is a fundamental standard of relevancy to require the admission of testimony which tends to prove that a person other than the defendant committed the crime, subject to the discretion of the court to exclude cumulative evidence and assure an orderly presentation of the case. *United States v. Armstrong,* 621 F.2d 951, 953 (9th Cir.1980). Apparently, the federal authorities show a preference for the admission of third-party perpetrator evidence. Federal judges are given discretion, under FRE 403, in determining whether the evidence is admissible. I take the position that it is the jury which should make the determination whether the evidence is merely speculative or fantastic or if the evidence is of sufficient exculpatory nature. In short, I reject the California line of authority and adopt the federal case authority and Wigmore's formulation of standards in admitting such evidence. The latter authorities are in line with federal constitutional requirements. Certainly, a defendant on trial for his life, or a lifetime of confinement, has the right to present a defense of facts which support his innocence. It is to be remembered, that in a criminal trial, South Dakota had the right to present rebuttal evidence; hence, South Dakota could have rebutted defendant's defense of third-party perpetrator. SDCL 23A–24–2(4) provides: "The parties may then, respectively, offer rebutting evidence only, unless the court, for good reason, in furtherance of justice or to correct an evident oversight, permits them to offer evi-

dence upon their original case[.]" Under this fair and orderly presentation of facts, the jury, rather than the trial court, should have tested and weighed the evidence.

In the case at bar, Luna, the criminally accused, sought to present evidence— present a defense—that another, a third-party perpetrator, committed the murders. This evidence, as noted in the majority opinion, is that: (1) Leonard, a violent drunk, entered a store with blood on his hands and shirt, shortly after the crime and a half block therefrom; that Leonard confessed to a drinking companion that he was a killer for hire and had committed the murders; and that two metal bars had disappeared from the residence of the person he was staying with; (2) that Thomas, a relative of the victims and a beneficiary of a life insurance policy and a taker under a will, violently threatened one of the victims 18 months prior to the crime; had not seen the victims for a year prior to the murders and then suddenly showed up at the crime scene shortly after the bodies were discovered. The coroner fixed the time of the victims' death at or about 2:30 a.m.; Leonard was seen in the convenience store at or about 2:30 a.m. with blood on his hands. If the jurors wish to reject this evidence, they may do so. The credibility, under these circumstances, was exclusively within the province of the jury and not the trial court. Even under the South Dakota evidentiary rule, concerning the admission of evidence that a third party has confessed to the crime, as found in SDCL 19–16–32 (FRE 804(b)(3)), there appears to be sufficient evidence to establish "corroborating circumstances." That statute states, inter alia, that "a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." The immediate neighborhood—almost the crime scene itself—the blood, the missing metal bars, the wildness and anger displayed at the convenience store, are all corroborating circumstances of the third-party perpetrator confession. It was certainly enough to place it before the jury and let the jury decide if it was true or false.

The trial court, however, excluded all of this evidence because it determined, inter alia, that it was inconsistent with Luna's theories of Leonard's and/or Thomas' guilt. The trial court, however, did not specifically determine that such evidence was irrelevant, SDCL 19–12–1, or if relevant, that its probative value was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." SDCL 19–12–3. This evidence was relevant evidence, not excludable under SDCL 19–12–3, supported by the law and had more than a tenuous foundation; thus, Luna was entitled to have the jury consider his theory of the defense. *Grimes.* The trial court, however, determined the credibility and consistency of Luna's defense and withheld the proffered evidence from the jury. This violated Luna's due process rights to present a defense in a fair trial. As this issue is dispositive, I do not address the other claimed errors below. Repeatedly, appellant's counsel advocated before this Court that the trial court had emasculated the defendant's defense. Under the above authorities, I am compelled to agree. I therefore would reverse and remand for retrial which would permit the defendant to defend upon the basis that a third-party perpetrator was involved. Let, then, the jury, not the trial court, determine the facts. In my opinion, the exclusion of this evidence, based upon rationale such as "to avoid confusion and unduly tying up the court process and to insure that the jury is able to focus on the facts of the case itself …," as expressed by the trial court, is vaulting the orderly administration of justice and efficiency over cherished constitutional protections.